[L. A. No. 1977. Department One.—February 1, 1908.]

TITLE INSURANCE AND TRUST COMPANY, Executor of the Will of Rosetta S. Ingersoll, Deceased, Appellant, v. C. K. INGERSOLL, Respondent.

HUSBAND AND WIFE—POWER TO TRANSMUTE SEPARATE PROPERTY INTO COMMUNITY PROPERTY.—A husband and wife may by contract transmute the separate property of either into community property.

ID.—ACTION BY WIFE TO ENFORCE TRUST—CONTROL BY HUSBAND OF WIFE'S PROPERTY—PRESUMPTION OF TRUST—BURDEN OF PROOF.—In an action by the wife to enforce a trust against the husband in respect of her separate property, the mere fact that the husband, with her consent, had the management and control of her separate property, does not show any intention on her part to make a gift thereof to the husband, or to change it into community property. The presumption in such case is that it continues to be her separate property, and that the husband takes the *corpus* or principal of such property in trust for the wife; and the burden of proof is upon the husband to show an intended change by the wife in the *status* of her property.

ID.—EXPRESS AGREEMENT NOT ESSENTIAL—CIRCUMSTANTIAL PROOF—SUPPORT OF FINDINGS FOR HUSBAND.—It is not essential, in order to support findings for the husband, that the understanding between the husband and wife was that her separate money delivered to him should be treated as community property, and that the wife converted it into community property, that the husband should show an express agreement to that effect on the part of the wife. The change in the *status* of the property may be shown by the nature of the transaction, or appear from surrounding circumstances, if clearly evincing the intention of the wife to change such *status*.

ID.—DEPOSIT OF WIFE'S MONEY TO CREDIT OF HUSBAND'S ACCOUNT IN BANK—EVIDENCE OF HUSBAND—USE AS COMMUNITY PROPERTY.—

CLIII Cal.—1

The evidence of the husband that the bulk of the money derived from sales of the wife's separate property, was deposited by the wife to the credit of the account of the husband in a local bank, where he kept his money, and that he drew from the same in payment of all general expenses of himself and wife, and for purposes of investment of property in his own name, and that it was generally understood between them, without express words, that this was a common fund, to be used indiscriminately for the benefit of the community, and that it was so treated for fifteen years, without objection by her or demand for an accounting, is sufficient, notwithstanding opposing circumstances, to sustain the finding in favor of the husband.

ID.—TRACING OF WIFE'S MONEY INTO REAL ESTATE.—Where the record shows, without conflict, that some of the money of the wife that came into the hands of the husband, was clearly traced into other property, · a finding that none of the money could be traced is not fully sustained. If there was no change in the *status* of her separate property, and a portion of it can be clearly traced, she is entitled to the relief asked in respect thereto.

ID.—PREJUDICIAL ERROR IN TESTIMONY FOR HUSBAND—EVIDENCE OF GOOD CHARACTER.—Where the evidence in support of the finding rested almost entirely upon the testimony of the husband, and there was no evidence impeaching his good character, and the case, viewed in the light most favorable to defendant, was a close one on the facts, in consideration of the burden of proof resting upon him, it was prejudicially erroneous, against the plaintiff's objection, to admit the testimony of witnesses for the husband to his good character for truth, honesty and integrity.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. G. A. Gibbs, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, for Appellant.

There was a presumption of undue influence by the husband over the wife, there being no consideration for passing the title of her separate property. (Civ. Code, secs. 158, 2235; *White* v. *Warren*, 120 Cal. 322, 45 Pac. 129, 52 Pac. 723; *Stiles* v. *Cain*, 134 Cal. 173, 174, 66 Pac. 231.) There is a presumption of continuance of the wife's title to her separate property in the husband's possession, and the husband must clearly show the contrary. (*Freese* v. *Hibernia etc. Soc.*, 139 Cal. 392, 73 Pac. 172; *Denigan* v. *Hibernia etc. Soc.*, 127 Cal.

139, 59 Pac. 389; *In re Bauer,* 79 Cal. 304, 310, 21 Pac. 759;
Wells on Separate Property of Married Women, pp. 224, 226,
and cases cited.)    There is a presumption that the husband held
the wife's property in trust, though invested in his own name.
(*Stickney* v. *Stickney,* 131 U. S. 227, 9 Sup. Ct. 677; *Johnston*
v. *Johnston,* 31 Pa. St. 450; *Methodist Episcopal Church* v.
*Jaques,* 1 John. Ch. 450; *Hileman* v. *Hileman,* 85 Ind. 1;
*Denny* v. *Denny,* 123 Ind. 240, 23 N. E. 519; *Armacost* v.
*Lindley,* 116 Ind. 295, 19 N. E. 138; *Patten* v. *Patten,* 75 Ill.
446, 451; *Chadbourne* v. *Williams,* 45 Minn. 294, 47 N. W.
812, 813; *Wales* v. *Newbould,* 9 Mich. 45, 63, 65; *Carter* v.
*Becker,* 69 Kan. 524, 77 Pac. 264; *Heinrich* v. *Heinrich,* 2
Cal. App. 479, 483, 84 Pac. 326.)    A trustee who wrongfully
commingles trust funds is in no better condition than one who
keeps them separated.    (Perry on Trusts, 5th ed., secs. 837,
838, 839, 841; *Gunter* v. *James,* 9 Cal. 657, 660; *Docker* v.
*Somes,* 2 Mylne & K. 655.)    The court erred in admitting
evidence of defendant's good character.    (Code Civ. Proc.,
sec. 2053.)

Valentine & Newby, for Respondent.

The commingling of separate with community property so
that they cannot be separated, draws the whole to it and
makes it community property.    (Ballinger on Community
Property, secs. 17, 68, pp. 44, 107.)    In such case the sepa-
rate property must be duly traced and located by proof, else
it must be deemed community property. (*Meyer* v. *Kinzer,*
12 Cal. 247, 251, 73 Am. Dec. 538; *Dimmick* v. *Dimmick,* 95
Cal. 323, 30 Pac. 547; *Reid* v. *Reid,* 112 Cal. 278, 44 Pac. 564;
*In re Boody,* 113 Cal. 684, 45 Pac. 858; *Lake* v. *Bender,* 18
Nev. 361, 7 Pac. 74; *Brown* v. *Lockhart,* 12 N. Mex. 10, 71
Pac. 1086; *Nixon* v. *Wichita Land etc. Co.,* 84 Tex. 408, 19
S. W. 560; *Manning's Succession,* 107 La. 456, 31 South. 862;
*Hill* v. *Young,* 7 Wash. 33, 34 Pac. 144.)    A wife has the
power to alter the legal relation of her separate property.
(Civ. Code, secs. 158, 159; *Yoakam* v. *Kingery,* 126 Cal. 33,
58 Pac. 324; *Tillaux* v. *Tillaux,* 115 Cal. 672, 47 Pac. 691;
*Burkett* v. *Burkett,* 78 Cal. 312, 12 Am. St. Rep. 58, 20 Pac.
715.)    Defendant did not take the wife's funds as trustee,
they being commingled with his own funds.    (*Estate of*

*Dutard,* 147 Cal. 257, 81 Pac. 315; *Byrne* v. *Byrne,* 123 Cal. 294, 45 Pac. 536; *Lathrop* v. *Bampton,* 31 Cal. 23, 24, 25, 89 Am. Dec. 141.) The course of conduct of the wife shows that she regarded the deposits in the bank · in her husband's name as community property, and she is estopped by her own conduct from claiming the contrary, to her husband's prejudice in expenditures. (10 Cyc. 158 and notes; *Abrams* v. *Ordway,* 158 U. S. 416, 15 Sup. Ct. 894; *Willard* v. *Wood,* 164 U. S. 502, 17 Sup. Ct. 176; *Penn Mutual L. Ins. Co.* v. *Austin,* 168 U. S. 685, 18 Sup. Ct. 223; *Courtright* v. *Courtright,* 53 Iowa, 57, 4 N. W. 824; *Darnaby* v. *Darnaby,* 14 Bush. (Ky.) 485.) The evidence of good character was admissible in view of the testimony of plaintiff's witnesses tending to contradict the husband's testimony. (*People* v. *Ah Fat,* 48 Cal. 63; *People* v. *Amanacus,* 50 Cal. 234; *People* v. *Crandall,* 125 Cal. 129, 57 Pac. 785; Code Civ. Proc., secs. 2051, 2052.) The evidence was not prejudicial and would not justify a reversal. (*People* v. *Murray,* 85 Cal. 350, 24 Pac. 666; *Alexander* v. *Central L. & M. Co.,* 104 Cal. 532, 38 Pac. 410; Code Civ. Proc., secs. 475, 1847.)

ANGELLOTTI, J.—This action was instituted October 16, 1903, by Rosetta S. Ingersoll against her husband, C. K. Ingersoll, to enforce an alleged trust as to certain real and personal property standing in the name of defendant, and to obtain an accounting from defendant as trustee, and a judgment against him for any money that should be found due plaintiff thereon. Mrs. Ingersoll died prior to the trial of the action, and the executor of her will has been substituted as plaintiff. This is an appeal by plaintiff from the judgment given in favor of defendant and from an order denying a motion for a new trial.

The theory of plaintiff's case, as shown by the complaint, was that the property in controversy was the proceeds of money constituting separate property of Mrs. Ingersoll, and that such money had been received by defendant with her acquiescence and consent, upon the understanding and agreement that he should receive and hold the same and all property in which the same might be invested, if invested in his name, in trust for her use and benefit. The defendant, by his answer, admitted the acquisition by his wife by gift, bequest,

or devise, of some twenty thousand dollars or thereabouts, and the receipt and subsequent control and possession of a large portion thereof by himself, but denied any agreement that he was to hold the same in trust for her. He alleged, on the contrary, that the understanding was that all the money so delivered to him should thenceforth be treated as community property, and that it was always so considered and treated, and that his wife converted it into community property. The trial court found in favor of defendant upon these matters. There can be no doubt that a husband and wife may by contract transmute the separate property of either or both into community property. (*Yoakam* v. *Kingery*, 126 Cal. 30, 32, [58 Pac. 324] ; *Estate of McCauley*, 138 Cal. 550, [71 Pac. 458].) These findings are vigorously attacked on this appeal.

We are of the opinion that the evidence cannot be held legally insufficient to support these findings. It may be conceded that the mere acquirement of the possession of a wife's separate property by the husband, and his subsequent management and control of the same, all with her consent, do not show any intent on the part of the wife to make a gift of the property to the husband, or to change its *status* from separate to community property. The presumption in such a case appears to be that the property continues to be the separate property of the wife, and that the husband takes it in trust for his wife. Under such circumstances it devolves on the husband claiming a gift or change in the *status* of the property to show the same. This is the well-settled rule as to the *corpus* or principal (see *Stickney* v. *Stickney*, 131 U. S. 227, [9 Sup. Ct. 677] ; *Denny* v. *Denny*, 123 Ind. 240, [23 N. E. 519] ; *Chadbourne* v. *Williams*, 45 Minn. 294, [47 N. W. 812] ; *Carter* v. *Becker*, 69 Kan. 524, [77 Pac. 264] ; *Jones* v. *Davenport*, 44 N. J. Eq. 33, [13 Atl. 652]), a distinction being recognized by some of the authorities between the *corpus* or principal, and rents or profits thereof. But it is not essential in such a case for the husband to show any express agreement on the part of the wife. The gift or change in the *status* of the property may be shown by the very nature of the transaction or appear from the surrounding circumstances. (See *Black* v. *Black*, 30 N. J. Eq. 215; *Reed* v. *Reed*, 135 Ill. 482, [25 N. E. 1095] ; *Schmidt* v. *Schmidt*, 56 Minn. 256,

[57 N. W. 453]; *Crumrine* v. *Crumrine,* 50 W. Va. 226, [88 Am. St. Rep. 859, 40 S. E. 341].) Mr. Perry says: "If a husband receive the capital fund of his wife's separate property there is no presumption that she intended to give or transfer it to him, but he is *prima facie* a trustee for her, and a gift from her to him will not be presumed without clear evidence, . . . but if the husband uses the property in his business, or for the support of his family, with her knowledge and assent, a gift may be inferred in the absence of a contrary agreement." (Perry on Trusts, p. 666.) The question in such cases is whether the evidence of the transaction and its surrounding circumstances clearly shows the intention of the wife to change the *status* of the property. There was evidence on the part of the husband in this case that some of this property was deposited by the wife immediately on its receipt to the credit of a running account kept by the husband in the local bank, an account to the credit of which he generally deposited all money coming into his hands, and upon which he drew in payment of all general expenses both of himself and wife, and for purposes of investment; that the great bulk of the property when received by her was immediately delivered to her husband and deposited by him with her knowledge to the credit of the same account; that this general fund, composed of the moneys thus mingled, was resorted to by the husband for the purchase in his own name of property, with her knowledge and consent; that it was generally understood between them without any express words to that effect that this was a common fund, to be used indiscriminately for the benefit of the community; that these conditions continued for some fifteen years without objection of any kind on the part of the wife, without any assertion of ownership by her of any part of the fund, and without any demand for any accounting. There were some minor circumstances detracting in some degree from the effect of all this, but they were not of sufficient force to preclude the trial court from inferring the intention of the wife to effect the change in the *status* of the property.

It is manifest, however, that the defendant's evidence was most material in the determination of the questions embraced in these findings. In fact, defendant's case rested almost entirely upon that evidence. The case, viewed in the most

favorable light to defendant, was a close one on the facts, and
the lower court could not determine the issue in his favor
unless it gave full faith and credit to his positive statements
as to many matters discussed by him in his testimony, and
as to which there was no other evidence in support of the
findings.    We say this much as a preliminary to the dis-
cussion of a ruling of the court admitting certain evidence,
which under the peculiar circumstances detailed we consider
prejudicially erroneous, if erroneous at all.

Defendant offered evidence in support of his character
as to truth, honesty, and integrity, and over the objections
of plaintiff that no attempt had been made to im-
peach the character of defendant, and that the evidence was
incompetent, irrelevant, and immaterial, defendant was al-
lowed to introduce the evidence of three witnesses to the
effect that his reputation in the respects mentioned was good.
As a matter of fact, no impeachment of the character of the
defendant had been attempted, other than such impeachment
as was involved in the production of evidence contradicting
that of the defendant on some of the issues in the case in
some minor respects.    This evidence, really offered for the
purpose of bolstering up the evidence of defendant, was, in
our opinion, clearly inadmissible.    Our statute provides:
"Evidence of the good character of a party is not admissible
in a civil action, nor of a witness in any action, until the
character of such party or witness has been impeached, or
unless the issue involves his character."    (Code Civ. Proc.,
sec. 2053.)    The issue in this case did not involve the char-
acter of defendant as a party (see *Van Horn* v. *Van Horn*, 5
Cal. App. 719, [91 Pac. 260]), and no attempt had been made
to impeach his character.    It is true that sections 2051 and
2052 of the Code of Civil Procedure provide that a witness
can be impeached "by contradictory evidence, or by evidence
that his general reputation for truth, honesty, or integrity is
bad," or by evidence that he has been convicted of a felony,
or has made inconsistent statements, but it does not follow
that every impeachment of a witness thus enumerated is an
impeachment of the *character* of the witness.    The statute
allows such evidence only when the *character* of the witness
is impeached.    Evidence that the general reputation of a
witness for truth, honesty, and integrity is bad is, of course,

an impeachment of the character of the witness and may be met by rebuttal evidence to the contrary. There is much authority for the proposition that proof that the witness has been convicted of a felony is an assault upon his character justifying the admission in rebuttal of evidence of good reputation for truth, honesty, and integrity. It has so been held in this state. (*People* v. *Amanacus,* 50 Cal. 233.) Some courts have held that proof of declarations by the witness inconsistent with the testimony given by him constitutes such an assault upon his character, but this rule can by no means be held to be a generally accepted one. This court has held that proof to the effect that a witness had made overtures to the parties against whom he testified, to testify for them if he was paid for it, was such an attack, warranting evidence of good character in rebuttal. (*People* v. *Ah Fat,* 48 Cal. 63.) The court was, however, careful to state that if the testimony had been directed to mere proof of contradictory statements of the witness upon matters relevant to the issues being tried, the propriety of evidence of character to sustain the testimony of the witness "would have been, to say the least, questionable." In *People* v. *Bush,* 65 Cal. 129, [3 Pac. 590], a judgment was reversed because of the giving of an improper instruction, and the admission of evidence on the part of the prosecution in support of the character of a witness. It does not clearly appear in the opinion whether the impeachment of the witness was merely by evidence contradicting his testimony, or by proof of previous statements by him inconsistent with such testimony, which Mr. Justice Sharpstein said in his concurring opinion amounted to nothing beyond contradictory evidence. In any event, a majority of the court concurred in the view that under section 2053 of the Code of Civil Procedure evidence of the reputation of the witness to prove good character is admissible only when the character of the witness has been attacked by evidence that his reputation for truth, honesty, and integrity is bad, which to some extent is inconsistent with the two earlier cases. But so far as it forbids the introduction of such evidence where the only impeachment is one by contradictory evidence, it is not inconsistent with either, and is in full accord with nearly all the decisions in other states. Mr. Wigmore says that no court favoring admission under such circumstances

seems to have attempted a reasoned justification of its policy, and the great majority of jurisdictions agree in excluding such evidence. (See 2 Wigmore on Evidence, sec. 1109, and note, and, generally, secs. 1104 to 1108.) The distinction is clearly made by the cases between a mere assault upon the credit of a witness and an assault upon his character, and cases like the one under consideration are placed in the former class.

Learned counsel for defendant contend that for certain reasons this evidence was not prejudicial to plaintiff, but we see no force in their claim. It is said that such testimony was merely in harmony with the presumption that a witness speaks the truth (Code Civ. Proc., sec. 1847), and did not affect the result of the trial. The presumption that a witness speaks the truth is one that may be repelled by the manner in which he testifies and by the character of his testimony. (Code Civ. Proc., sec. 1847.) It is impossible for this court to say how much weight and influence this evidence of good reputation of the witness had upon the mind of the trial judge in determining the amount of credit to be given to his testimony. As has been said before, under the peculiar circumstances of this case, it "may have been all-powerful to that effect," and may have been the factor that turned the scale in favor of defendant upon the matters embraced in the findings we have discussed. Counsel for defendant evidently thought it was important evidence, or they would not have offered it, and the trial judge evidently considered it material, or he would not have admitted it. If the trial court was led to place more reliance upon the testimony of defendant by reason of such evidence of reputation than he would otherwise have done, and we cannot say that this was not the result, plaintiff was clearly prejudiced by the rulings admitting it. (See, generally, *Rulofson* v. *Billings*, 140 Cal. 460, [74 Pac. 35] ; *Short* v. *Frink*, 151 Cal. 83, [90 Pac. 200], and cases there cited.) The fact that the defendant was called and examined as a witness by plaintiff we regard as of no importance in this connection. Bearing in mind the rule that the receipt of his wife's separate property by him being shown, which was a fact admitted by the pleadings, the burden was on him to show a change in its *status* from such separate property, it is clear that the admission of evidence

of good reputation to bolster up the testimony given by him in support of a claim of such change must be held to have been prejudicially erroneous.

The record shows that some of the money of the wife that came into the hands of the husband was clearly traced into certain property by evidence that was practically without conflict, and in this respect the findings of the court that the money could not be traced are not fully sustained by the evidence. If there was no change in the *status* of the wife's separate property, and a portion thereof was clearly traced, plaintiff was entitled to the relief asked for that portion, even if under the pleadings as they now stand it could not obtain relief as to the portion not traced, which is the claim of defendant. We do not, however, desire to be understood as conceding the correctness of this claim.

The objection that some of the findings involved in our discussion of the case are not attacked by specification of insufficiency is not well taken.

While some other questions are discussed by counsel, we deem it unnecessary to consider any of them on this appeal.

The judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.