[L. A. No. 17331. In Bank.—December 24, 1940.]

In the Matter of the Estate of JEAN WATKINS, Deceased. WILLIAM ELMER WATKINS et al., Appellants, v. LAURENCE KEELE, Respondent.

J. E. Simpson and Simpson & Simpson for Appellants.

Faries & McDowell, as *Amicus Curiae*, on Behalf of Appellants.

Stimson & Edwards, Noel Edwards and Louis Thomsen for Respondent.

Salisbury, Robinson & Himrod, Freston & Files, Bailie, Turner & Lake, Frank P. Doherty, Gerald E. Kerrin, Frank J. Barry, Girard F. Baker, MacFarlane, Schaefer, Haun & Mulford, John E. McCall, Howard C. Velpmen, Schell & Delamer, De Lancey C. Smith, George K. Ford, Charles A. Loring and Gordon L. Files, as *Amici Curiae*, on Behalf of Respondent.

SPENCE, J., *pro tem.*—This is an appeal from a decree determining heirship in proceedings instituted under section 1080 of the Probate Code.

The rival claimants are the appellants, who are the relatives of Henry G. Watkins, deceased, and the respondent, who is a relative of Jean Watkins, deceased. Henry G. Watkins and Jean Watkins were husband and wife, having married in 1899. Henry G. Watkins died in 1926 and Jean Watkins died in 1936. During the marriage the parties had accumulated a substantial amount of real and personal property which was appraised in the probate of the husband's estate at a sum in excess of $300,000.

Shortly before the death of Henry G. Watkins, he and his wife executed a joint and mutual will, the instrument being entitled "Last Wills and Testaments of Henry G. and Jean Watkins". It was stated therein that "These are the last wills of Henry G. Watkins and Jean Watkins, husband and wife. . . . " It was further stated that "We declare that the property here disposed of was accumulated and acquired during our marriage and is community property." Each of the spouses willed all to the other in the event of predeceasing the other, and then there were included extensive provisions for the disposition of all of their properties "In the event that both of us shall die at the same time or from the same accident or from illness of both at the same time or from any other causes or before this will shall have been probated. . . . "

In the proceedings had for the purpose of determining the inheritance tax during the probate of the husband's estate, the wife filed her affidavit stating "that all of the property of which the said Henry G. Watkins died possessed either in his own rights or as tenant in common with affiant, or as joint tenant with the right of survivorship with affiant was as to each and every item and parcel thereof the community property of this affiant and said Henry G. Watkins." Upon the hearing, the wife so testified and the court so found. In the present proceeding to determine heirship in the estate of the wife, appellants claimed that the property was the community property of the husband and wife and they therefore claimed the right to share in the distribution thereof under the provisions of section 228 of the Probate Code.

While said section 228 has been since amended, it read as follows at the time of the death of the wife in 1936: "If the decedent leaves no issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, such property goes in equal shares . . . (to designated relatives of each)." The determinative question on this appeal is whether the property was the community property of Jean Watkins and Henry Watkins within the meaning of said section 228.

It was stipulated upon the trial that all of the real and personal property accumulated by the spouses was originally the "community property" of the spouses. Respondent claimed, however, that the execution of certain instruments changed the character of the property to property held in joint tenancy by the spouses and that thereafter it was not their "community property" within the meaning of said section 228. Said instruments consisted of (1) a safe deposit box rental agreement executed by the spouses; (2) a bank account signature card executed by the spouses; and (3) a conveyance of the real property of the spouses to third persons and the immediate reconveyance of said real property to the spouses by a deed conveying the property to them as joint tenants.

Appellants answered respondent's claims in several ways but the trial court found and concluded in this proceeding in the estate of the wife that "all of the property in the above-entitled estate was prior to the death of Henry G. Watkins, the joint tenancy property of Henry G. Watkins and Jean Watkins, and came to Jean Watkins as the surviving joint tenant. . . . That upon the death of Jean Watkins, she left no property which was the community property of Henry G. Watkins and Jean Watkins. . . . That none of the property of the estate of Jean Watkins, at the time of her death, came to Jean Watkins from Henry G. Watkins by gift, devise, or bequest. . . . That all of the property of the estate of Jean Watkins at the time of her death was separate property, and that as such, under the laws of succession of the State of California, became vested in Laurence Keele, as the grandnephew and sole heir of decedent, Jean Watkins."

It is thus apparent that if the property in the estate of Jean Watkins was the "community property" of Henry G. Watkins and Jean Watkins within the meaning of said section

228, the court erred in its findings and conclusions above set forth as appellants, being the relatives of Henry G. Watkins, should have been held to be entitled to share in the distribution thereof.

We deem it unnecessary to discuss all of appellants' contentions on this appeal for we are of the opinion that under the uncontradicted evidence it must be held as a matter of law that the property in the estate of Jean Watkins was the ''community property'' of Henry Watkins and Jean Watkins within the meaning of said section 228. We have reached this conclusion without regard to the claim of appellants that the evidence showed that the spouses never intended at any time to change the status of any of their community property to joint tenancy property. Even if it be assumed that they did have such intention at the time of the execution of the so-called joint tenancy instruments above mentioned and that the execution of said instruments had the effect of carrying out such intention, it seems entirely clear that subsequently and at the time of the execution of the joint and mutual will, they jointly expressed their intention in writing that all of said property should have the status of community property.

It is well settled that a husband and wife may agree with respect to the character of the property which they hold and that they may transmute their property from one status to another by an agreement which ordinarily need not be executed with any particular formality. (*Kenney* v. *Kenney*, 220 Cal. 134 [30 Pac. (2d) 398]; *Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214]; *Title Ins. & Trust Co.* v. *Ingersoll*, 153 Cal. 1 [94 Pac. 94]; *Collins* v. *Sword,* 4 Cal. App. (2d) 437 [41 Pac. (2d) 170]; *Estate of Sill,* 121 Cal. App. 202 [9 Pac. (2d) 243]; *Estate of Wahlefeld,* 105 Cal. App. 770 [288 Pac. 870]; *Vieux* v. *Vieux,* 80 Cal. App. 222 [251 Pac. 640]; *Martin* v. *Pritchard,* 52 Cal. App. 720 [199 Pac. 846].)

A single written instrument may constitute both a will and a contract (*Security First Nat. Bank* v. *Stack,* 32 Cal. App. (2d) 586 [90 Pac. (2d) 337]; *Norton* v. *Estate of Norton,* 41 Cal. App. 614 [183 Pac. 214]), and we believe that the declarations contained in the joint and mutual will must be held to have constituted an agreement between the spouses fixing the status of their property as community

property. But even if the declaration found in the joint and mutual will be treated merely as a recital in the written instrument executed by the spouses, the same result must follow as there is a conclusive presumption of ''The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; . . . '' (Code Civ. Proc., sec. 1962, subd. 2.)

While the case of *Security First Nat. Bank* v. *Stack, supra,* did not involve a joint and mutual will, it did involve the will of a husband and the written consent by his wife. The will there stated, ''I declare that all of the property in which at the date hereof I have any interest, or which at this date stands in my name or in the name of myself and my wife, is our community property. . . . '' The wife's written election and waiver was attached to and made a part of the will, and she thereby consented thereto. After the death of the husband, the wife claimed title, as the alleged surviving joint tenant, to certain securities found in a safe deposit held in their joint names and purchased with funds from their joint bank account. The court there held that the declaration in the will and the wife's consent thereto terminated the joint tenancies and fixed the character of the property as community property. The court said at page 592, referring to said declaration in the will, ''This statement acquiesced in and agreed to by the defendant, regardless of the manner of the prior ownership of property or in whose name or names it stood, constituted for the purpose of disposition under the will the community estate of the respective parties. . . . From the foregoing the conclusion is inevitable that as a matter of law no joint tenancies existed in the property of the parties upon the death of the husband.'' (See, also, *Flanagan* v. *Capital Nat. Bank,* 213 Cal. 664 [3 Pac. (2d) 307]; *Estate of Whitney,* 171 Cal. 750 [154 Pac. 855]; *Estate of Wyss,* 112 Cal. App. 487 [297 Pac. 100].)

In the present case, we conclude as a matter of law that the declaration of the spouses in their joint and mutual will likewise fixed the character of the properties as between the spouses for the purpose of the disposition under the husband's will and also as between their successors for the purpose of this proceeding.

Respondent cites and relies upon *Estate of Fritz,* 130 Cal. App. 725 [20 Pac. (2d) 361], and other similar cases but we find none of them in point. In *Estate of Fritz, supra,* it was properly held that a declaration in a will by a single testator that the money in a joint tenancy bank account "is all my own" could not serve to contradict the terms of a written agreement between the testator and another which admittedly created a joint tenancy.

As the evidence on the material issues was uncontradicted and as that evidence showed as a matter of law that appellants were entitled to share in the distribution of said estate under the provisions of said section 228, it follows that the judgment should be reversed with directions. It therefore becomes unnecessary to discuss appellants' further contention that the court committed prejudicial error in denying their motion for a jury trial in these proceedings. The error, if any, in such denial could not be held to be prejudicial under the circumstances.

The judgment is reversed with directions to the court below to amend its findings and conclusions and to enter its judgment to conform to the views herein expressed. Appellants will recover their costs on this appeal.

Shenk, J., Traynor, J., Carter, J., and Edmonds, J., concurred.

A rehearing was denied on January 23, 1941, and the following opinion then rendered thereon:

THE COURT.—In the petition for rehearing it is claimed that the decision "overrules without mentioning an identical case involving a mutual will, the *Estate of Learned,* 156 Cal. 309 [104 Pac. 315]". The Learned case was not called to our attention prior to this petition for a rehearing. A reading of the opinion in *Estate of Learned* shows that that case did not involve the question presented in the present case and that any language used in that case which may appear to be in conflict with the language used in the opinion herein was not necessary to that decision. The Learned case was correctly decided on the facts before the court and is not overruled by the present case. To the extent that there be any apparent conflict between the language

ion herein and the language used by way of *dictum* in the Learned case, the views expressed in our opinion in this matter must prevail.

The petition for a rehearing is denied.