[Civ. No. 7368.   Third Dist.   Nov. 22, 1947.]

AVERIL C. ANDREWS, Respondent, v. FRANK X. ANDREWS, Sr., Appellant.

Emerson W. Read for Appellant.

Henry & Bedeau for Respondent.

ADAMS, P. J.—In this case an interlocutory decree of divorce was awarded to plaintiff on the ground of defendant's extreme cruelty. Defendant has appealed therefrom, but states in his brief that he is "not appealing as far as the divorce is concerned." He does, however, urge that the decree should be "reversed and modified to hold" that two certain pieces of real property and certain personal property which were disposed of by the decree were his separate property, free and clear of interests of any kind in plaintiff.

The evidence shows that plaintiff and defendant were married in Modesto on June 14, 1923. The only issue of such marriage was a son, who, at the time of the trial in April, 1946, was about 6 years of age. The parties separated in December, 1945, at which time defendant left the family home at 4700 T Street, Sacramento, telling plaintiff that he

wanted a divorce because he wanted to marry another woman. At that time the parties owned the said home and also an apartment house in Sacramento, which is referred to as the Andrews Apartments. They also owned personal property consisting of furniture and furnishings in the home as well as in the apartment house, an automobile, certain bonds, cash, etc.

At the conclusion of the trial the court made findings which recited that property constituting the Andrews Apartments and the furniture and furnishings therein and used in connection with its operation was community property; also that the furniture and furnishings in the home on T Street (with certain exceptions not pertinent here), the automobile, the bonds, etc., were community property, but that the home on T Street was held and owned by the parties as tenants in common. In its decree it adjudged that the apartment house and its furnishings be awarded to the parties in equal shares. The furniture and furnishings in the home were awarded to plaintiff, and the other property was awarded in part to one or the other, or to both, equally. The custody of the child was awarded to plaintiff, and defendant was directed to make to her for her support and that of the child a monthly payment, the amount thereof to depend upon whether defendant did or did not permit plaintiff to continue to live in the T Street home.

It is the court's determination that the home property was owned by plaintiff and defendant as tenants in common, and that the apartment house and its furniture and furnishings were community property, that appellant attacks upon this appeal, it being his contention that both were his separate property.

Regarding the Andrews Apartments, appellant asserts that the lot was conveyed to him by an aunt by deed of gift dated April 10, 1939; that *he* built and furnished the apartment house with funds acquired by effecting a loan from a bank in the sum of $12,000; that *he* borrowed $900 from his wife's mother, $1,500 from California State Employees Association, $2,500 from a bank on credit of his wife's mother's realty, and that he had "several thousand dollars of his own from inheritances"; and that he never conveyed any interest in the property to plaintiff.

The rule laid down in *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757-758 [146 P.2d 905], is directly applicable to this case. There the court said:

"It is the general rule that evidence may be admitted to establish that real property is community property even though title has been acquired under a deed executed in a form that ordinarily creates in the grantee a common law estate with incidents unlike those under the law of community property. Thus, land may be shown to be community property even though it is granted to one spouse alone as his or her property in fee simple. (*Jaegel* v. *Johnson,* 148 Cal. 695 [84 P. 175]; *Hammond* v. *McCollough,* 159 Cal. 639 [115 P. 216]; *Hibernia Sav. & Loan Soc.* v. *DeRyana,* 210 Cal. 532 [292 P. 632]; *Estate of Cronvall,* 220 Cal. 503 [31 P.2d 372].) Again, it may be shown that husband and wife intended to take property as community property even though they accepted a deed drawn to them as tenants in common. (*Trimble* v. *Trimble,* 219 Cal. 340 [26 P.2d 477]; *Steere* v. *Barnet,* 54 Cal.App. 589 [202 P. 166].) It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property. (*Hulse* v. *Lawson,* 212 Cal. 614 [299 P. 525]; *Jansen* v. *Jansen,* 127 Cal.App. 294 [15 P.2d 777]; see *Minnich* v. *Minnich,* 127 Cal.App. 1, 8 [15 P.2d 804]; *Horsman* v. *Maden,* 48 Cal.App. 635, 640 [120 P.2d 92].) Such rulings are designed to prevent the use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties. Moreover, it is well settled that property may be converted into community property at any time by oral agreement between the spouses (*Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398]; *Estate of Watkins,* 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1]; *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1 [94 P. 94]; *Estate of Kelpsch,* 203 Cal. 613 [265 P. 214]), and an agreement at the time the property is acquired has the same effect."

▇ Therefore, it was proper for the trial court in this case to hear testimony tending to show that the parties intended to take the apartment house lot as community property, and likewise testimony tending to show that, even if the original deed conveyed the lot to defendant as his separate property, it was converted into community property by oral agreement between the spouses. Such evidence was admitted, and the court found that the property was community property. Therefore, the only question before this court, as an appellate tribunal, is whether there is evidence in the record to sustain its conclusion.

Disregarding conflicts, and giving to the evidence, and proper inferences therefrom, their fullest effect in support of the findings and judgment as we are obliged to do (*Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625]; *Pewitt* v. *Riley,* 27 Cal.2d 310, 313 [163 P.2d 873]), we cannot say that such judgment is without substantial support.

Mrs. Andrews testified that before the acquisition of the lot she and defendant had a conversation about the ownership of the property and the building of an apartment house thereon; that defendant said that they would take their savings, that defendant would try to borrow from the State Credit Association, and that plaintiff should see if her mother would put a mortgage on her home, and they would then see if they could raise enough money by going to the bank to erect an apartment house on the lot, and that if they did it would belong to both of them and they would have something to take care of them in their old age; that they had many such conversations, and that whenever the apartments were referred to they were called ''our apartments.'' Plaintiff further testified that it was she who induced her mother to put a mortgage on her home by which $2,500 was raised, and to lend them $900 out of $1,000 in cash she had in a savings account. The record shows that a bank loan of $12,000 was obtained which was secured by a note and deed of trust which were signed by both plaintiff and defendant.

Plaintiff also testified that in addition to raising money as above stated, she further performed her part of the agreement by being almost continuously at the apartment house (many more times than appellant) until December 3, 1945, the date of the separation, at which time appellant moved from the family home to the apartment house. Before construction, which was about six weeks after the money was raised, she did physical work in clearing the lot of weeds and wild blackberry vines, and worked there almost daily. As soon as Mr. Gould started to construct the apartments she was there every day — sometimes five or six times a day — advising and consulting with the contractor, furnishing suggestions and performing other acts, the same as any other owner would do. She sewed and made all the linens that were in the building—made the curtains and did the shopping

and buying to furnish the apartments. She bought the linens a few at a time. She selected the lights and other fixtures, the bedding, chiffoniers, carpets, stoves, refrigerators, dishes, silverware, linens and all other furniture that were placed in the apartments. After the building was constructed, she was there almost continuously, practically every day, performing some act, and doing some duty that could be expected of an owner. She was there practically every day until Mr. Andrews left the family home. She helped and assisted in taking care of the place, planted everything that was in the yard except the grass; remade the curtains for each apartment, fixed the shower curtains, cleaned the venetian blinds and did everything extra that it was possible for her to do.

Her testimony was corroborated by her mother, Mrs. Reese, who testified that her daughter solicited her to raise all the money the bank would lend on her home and to lend them $900 from her savings account—the money to be used to construct the apartment house; and that Mr. Andrews, at that time, stated that the property would belong to both of them. Mrs. Reese, at first, did not agree to lend the money, but when respondent and appellant made a proposition that if she would let the rent from her home be used to make payments on the apartment house and would go to live at the apartments, have an apartment furnished free of charge, and do the work of managing the apartments until they could get the apartments paid for, then they would pay her something, and that she was to have a home there the rest of her life. She said that the money was lent to respondent, and no one else. This witness also testified in detail as to the work done by respondent at the apartment house, both before and after construction.

L. F. Gould, the contractor who built the apartment house, testified in substance that he was present when respondent and appellant discussed the ownership of this property. This conversation occurred when appellant asked the witness what he could do with such a piece of property, stating that his aunt owned it with an old shack on it; that it was a nice piece of property and he thought something could be done with it in the way of apartments. The witness drew for Andrews a rough sketch of the type of an apartment house to be put on this property. Appellant then stated: "Well, my idea in doing this, my aunt says she will give me the property providing we will improve it." The witness stated: "Well, it

will make a nice income for the years to come,'' to which appellant replied: ''That's what I want; we will have something there we can get along on if anything happens to me in my job in the future; we will have those apartments to live on.'' Appellant further told the witness: ''If we can go through with the deal and get it financed, will go ahead with it, so you go ahead and work out some tentative plans and tentative figures, and I will have something definite to submit to the bank, and if we can go ahead with it, you have a job.'' This witness testified that he had conversations at different times in which the ownership or title to the property was discussed, at which time appellant stated: ''We can get along nicely on that amount of money and we hope eventually the rent can be shoved up a little more as time goes on.'' The plans for the apartment house bore the names of both spouses, printed thereon by the architect.

The evidence indicates that no question arose between plaintiff and defendant as to the ownership of this property and that appellant made no claim that it was his separate property until after he left plaintiff and the home on T Street and went to live in the apartment house, and after he had told plaintiff that he wanted a divorce as he desired to marry another woman.

The next question is whether there is sufficient evidence in the record to sustain the trial court's finding that the home property was held by the spouses as tenants in common, which finding recites that said property was a gift from defendant's aunt to plaintiff and defendant. We think it finds sufficient support in the testimony of plaintiff. She stated that when she and defendant were married, Mrs. Kilday, defendant's aunt, who owned a home at 39th and K Streets, asked plaintiff and defendant if they wanted that place to live in or wanted a new home; that plaintiff preferred a new home so Mrs. Kilday sold said property, and told plaintiff she could select a lot, which plaintiff did, and Mrs. Kilday paid for it; that Mrs. Kilday gave plaintiff permission to design the kind of house she wanted; that she and defendant decided on the plans, and built the house which Mrs. Kilday paid for; but not having enough money for that purpose, a mortgage was put on it in Mrs. Kilday's name, defendant agreeing to pay off the mortgage; that later Mrs. Kilday put another mortgage on the place, which Mr. Andrews paid off in part out of his salary and then secured a F.H.A. loan. She further stated that the property was given to her and

defendant as a wedding present; that defendant had urged Mrs. Kilday to give him a deed but she refused, until 1929, at which time she executed a deed but directed defendant not to record it until after her death, but that he disobeyed her and recorded it in 1934, and then secured the F.H.A. loan of which $700 remained unpaid.

We think that in view of the foregoing evidence and the rules enunciated in *Tomaier* v. *Tomaier, supra,* and *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398], the trial court was justified in its conclusion that plaintiff and defendant were tenants in common of the home property in that it was intended to be a wedding gift to both plaintiff and defendant and was not intended as a gift to defendant alone. While there is testimony on the part of appellant which contradicts that of plaintiff, it is apparent that the trial court did not accept same as true; and since that court saw and heard the parties, it was in a better position than we are to evaluate their testimony. The question was one of fact for that court (*Marvin* v. *Marvin,* 46 Cal.App.2d 551, 557 [116 P.2d 151]); and since its findings are not without sufficient support, the judgment should be and it is hereby affirmed.

Peek, J., and Thompson, J., concurred.