[Civ. No. 16613.   Second Dist., Div. Three.   Apr. 18, 1949.]

DON D. FAUST, Respondent, v. GERALDINE L. FAUST, Appellant.

Rogers & Rogers for Appellant.

William Kinley for Respondent.

VALLÉE, J.—Defendant, Geraldine L. Faust, appeals from that portion of an interlocutory decree of divorce granted to plaintiff, Don D. Faust, decreeing a portion of monies on deposit in an escrow, received from the sale of real estate in Arcadia, California, title to which stood in the name of defendant as her sole and separate property, to be community property and disposing of it as such.

On March 29, 1946, respondent instituted a suit for divorce against appellant on the ground of extreme cruelty and for a division of the community property, which he alleged consisted of a house and lot in Arcadia of the approximate value of $16,000. Appellant answered and cross-complained. Respond-

ent's allegation with respect to the community property was denied by appellant, and in her cross-complaint she alleged the community property consisted of cash in an undeterminable sum, a 1936 Dodge coupé valued at $800, United States war bonds of the face value of $900, and household furnishings of an undeterminable value. An interlocutory decree was awarded respondent. No complaint is made by appellant as to the disposition made by the trial court of property other than the money on deposit in an escrow derived from a sale by appellant of property located in Arcadia (referred to as the "Arcadia property"), for a total sum of $16,900. With respect to this latter sum, the court found that $8,388 thereof was community property and concluded that respondent was entitled to $4,194, half thereof.

Appellant contends that this finding is unsupported by the evidence. She also contends that, in the event the court determines the evidence is sufficient to establish a community interest, the amount found to be of a community character is not supported by the record.

Disregarding conflicts, and giving the evidence and the inferences therefrom their fullest effect in support of the findings (*Andrews* v. *Andrews*, 82 Cal.App.2d 521, 525 [186 P.2d 744]), we cannot say that the disputed finding is without support.

The parties were married in Las Vegas on November 22, 1941 and separated in the month of March, 1946. One month after the marriage, they purchased a parcel of improved real property in Fontana, California (referred to as the "Fontana property"), consisting of 2½ acres, for $3,850, payable $900 down and the balance in monthly installments of $35. Because of an outstanding indebtedness which respondent owed a former wife, it was agreed between the parties that title should be taken in the name of appellant as her separate property, and the real estate agent who sold the property was so instructed. Respondent testified that the property "was supposed to be put in both our names as community property" after his account with his former wife was settled, but "we never got around to it." The down payment was made from funds acquired by appellant prior to her marriage with respondent.

Respondent moved onto the property in January of 1942. Meanwhile, because of the war, appellant remained in Long Beach where she was employed as a telephone operator but she spent each week end with respondent on the ranch. The

parties considered the "Fontana property" as their home. Respondent immediately began to make extensive and substantial repairs and improvements on the property, the money for which came partly from respondent's separate property, partly from proceeds received "off the property," and partly from unemployment insurance money respondent had been drawing. He estimated that, exclusive of his labor, the total improvements made by him on the premises amounted to "around $900." In the month of January, the parties purchased 600 baby chickens for $200 with money borrowed from Bank of America, which appellant paid off. Subsequently, from profits of the ranch, 4,100 additional chickens were purchased. Respondent devoted his entire time to the management and operation of the property and, as appellant testified, "had complete financing of the farm." The parties raised chickens in commercial quantities, sold the eggs, and likewise sold grapefruit crops. The money that came from the sale of the crops was turned over to appellant, and the money from the chickens was retained by respondent. Appellant assisted respondent in selling eggs and received therefor a small stipend. Joint income tax returns were filed by the parties showing the income of each to be community property. These reflected that in 1942 the property returned a net profit of $158.56, in 1943 a net profit of $1,605.64, and in 1944 a net profit of $1,718.31.

The monthly installments upon the balance of the purchase price of the "Fontana property" were paid partly out of separate funds belonging to appellant and partly out of community income, being appellant's salary and profits and proceeds received by respondent from the operation of the ranch. The property was completely paid for by April of 1944. In November, 1944, the property, including the furniture, was sold for $6,460. Respondent testified: "Q. Did you have any discussions relative to trading this property for another property, as to how the deed was to be made out? A. After that time the deeds were to be made in both our names, be community property. Q. What did she say? A. She said it would be all right. Q. When did that conversation take place? A. It taken place just about the time the place was sold. Q. Then what happened? A. After we sold the place she wanted to keep the money in her bank and buy another place, which I agreed to, which we never bought another place. The last time we looked was in San Fernando Valley. We went

with a man by the name of Fred Senter and spent a whole day there but didn't find anything suitable. Q. What year? A. January, 1945.'' Appellant retained the proceeds from the sale of the ''Fontana property'' in her bank account.

In June of 1945, appellant, without the knowledge or consent of respondent, purchased the ''Arcadia property'' for $12,500, title to which was taken in her name as her separate property. She made a down payment of $7,500, which payment included the funds received from the sale of the ''Fontana property.'' The balance of the purchase price was paid from proceeds received by appellant from the sale of real property owned by her prior to her marriage to respondent. Thereafter, and without the knowledge or consent of the respondent she sold the ''Arcadia property'' for $16,900. This is the sum of which $8,388 was found to be community property and $4,194 thereof awarded to respondent.

In determining whether property is community or separate property of the spouses, a trial judge is not bound by the form of the deed alone. (*Tomaier* v. *Tomaier,* 23 Cal. 2d 754, 757 [146 P.2d 905]; *Estate of Watkins,* 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1]; *Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398]; *Rogers* v. *Rogers,* 86 Cal.App.2d 817, 821 [195 P.2d 890]; *Andrews* v. *Andrews,* 82 Cal.App.2d 521, 524 [186 P.2d 744]; *Horsman* v. *Maden,* 48 Cal.App.2d 635, 640 [120 P.2d 92].) Property may be found to be other than that indicated by the deed either because of the intent with which the deed was made, or made and received, or because of an oral agreement between a husband and wife, carried into effect, determining their respective interests in the property. Thus, property which ordinarily would be the separate property of one of the spouses may be converted into community property at any time by an executed oral agreement between the spouses, and *vice versa.* (*Tomaier* v. *Tomaier,* 23 Cal.2d 754, 757 [146 P.2d 905]; *Estate of Watkins,* 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1]; *Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398]; *Estate of Kelpsch,* 203 Cal. 613 [265 P. 214]; *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1, 5 [94 P. 94]; *Rogers* v. *Rogers,* 86 Cal.App.2d 817, 821 [195 P.2d 890].) An agreement made at the time the property is acquired has the same effect. An agreement between husband and wife to transmute property from one status to another need not be executed with any particular formality as long as it may be fairly inferred from all of the circumstances that transmutation was intended.

(*Estate of Watkins, supra,* 16 Cal.2d 793, 797; *Kenney* v. *Kenney, supra,* 220 Cal. 134, 136; *Estate of Sill,* 121 Cal.App. 202, 204 [9 P.2d 243].) There was substantial evidence sufficient to establish that notwithstanding title to the "Fontana property" was taken in the name of appellant, it was community property by agreement, fully consummated by the spouses during their marital life by the declarations, acts and conduct heretofore related. Upon the sale of the "Fontana property" the proceeds therefrom were likewise community.

Where a divorce is granted on the ground of extreme cruelty, as here, the court must award more than half of the community property to the innocent party. (*Tipton* v. *Tipton,* 209 Cal. 443, 444 [288 P. 65]; *Falk* v. *Falk,* 48 Cal. App.2d 762, 770 [120 P.2d 714].) The court awarded half of the community interest in the "Arcadia property" to respondent. He is not complaining because he was not awarded more than half. We think, however, that the court erred in determining that $8,388 of the $16,900 received from the sale of the "Arcadia property" was community property. The evidence discloses that the only property of a community nature invested in this parcel of real estate was the proceeds from the "Fontana property." The balance was paid from appellant's separate property owned by her prior to her marriage to respondent. While the evidence supports the conclusion that the "Fontana property" became community property there is no evidence to support such a conclusion with respect to any other parcel of real property owned by appellant prior to her marriage to respondent, nor was such a contention advanced by respondent at the trial. The agreement between the parties, as testified to by respondent, was that the proceeds from the "Fontana property" were to be used to purchase another parcel of property, title to which was to be in the names of both parties. There is not a scintilla of evidence that there was any agreement that any separate property invested by appellant in such a venture would likewise be community property.

Where community and separate property are commingled and property is purchased with the mixed funds, as here, and each contribution is clearly ascertainable, the character of the funds remains unchanged. (3 Cal.Jur. 10-Yr. Supp. § 40, p. 524.) There is both a community and a separate interest in property purchased with separate and community funds where each contribution is clearly ascertainable. (*Miller*

v. *Brode,* 186 Cal. 409, 413 [199 P. 531].) Here the amounts contributed in the purchase of the "Arcadia property" are ascertainable. The community contributed $6,460, and appellant, $6,040 of her separate funds, to the purchase price. By stipulation of the parties, additional testimony not before the trial court is incorporated in the record for our consideration. It shows that the total cost of the property, including improvements, was $13,239.73. The net receipts from the sale of the property was $15,877.25. The net profit from the sale was $2,637.52. This profit should be distributed in proportion to the amount the separate fund—51.2 per cent—and the community property—48.8 per cent—invested in the property bear to it. Thus, $1,287.11—48.8 per cent of $2,637.52—of the profit earned is community.  ▮  The total community interest in the "Arcadia property" is, therefore, $7,747.11 ($6,460 + $1,287.11), of which respondent is entitled to one-half, or $3,873.56. We have no doubt but that the trial judge would have reached the same conclusion had this evidence been before him.

The part of the judgment which now reads: "The sum of $4,194.00 cash of the funds now on deposit in the escrow in the Bank of America National Trust & Savings Association, Arcadia Branch, as his separate property. Money received from the sale of 1941 Buick, to defendant, as her separate property; one-half of the United States War Savings Bonds to defendant, as her separate property, and defendant is awarded the remaining sums of money now in deposit in said escrow after deducting the sum of $4,194.00 therefrom, as her separate property," is modified to read as follows: "The sum of $3,873.56 cash of the funds now on deposit in the escrow in Bank of America National Trust & Savings Association, Arcadia Branch, to plaintiff, as his separate property. Money received from the sale of 1941 Buick, to defendant, as her separate property. One-half of the United States War Savings Bonds to defendant, as her separate property, and defendant is awarded the remaining sums of money now on deposit in said escrow after deducting the sum of $3,873.56 therefrom, as her separate property."

As thus modified the judgment is affirmed.

Shinn, P. J., and Wood, J., concurred.