THE ESTATE OF DON MURILLO BROCKWAY DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24446. Promulgated June 10, 1952.

*George T. Altman, Esq.*, for the petitioner.
*H. A. Melville, Esq.*, for the respondent.

490

492

494

OPINION.

LeMire, *Judge:* The first issue involves the question whether, at decedent's death, all the issued and outstanding shares of the capital stock of Crown were jointly owned by decedent and his son, and, if so, the amount includible in the decedent's gross estate as the value of his interest. At the time of decedent's death there were issued

and outstanding in the joint names of the decedent and his son Murillo 750 shares of common and 950 shares of preferred stock. The conceded aggregate book value of the total shares at the critical date was the sum of $315,327.92, one-half of which amount the respondent included in decedent's gross estate.

It is the contention of petitioner that, although the Crown stock was registered in the joint names of decedent and his son Murillo, all the stock, in fact, was owned by Murillo, who had acquired the decedent's interest for a full and adequate consideration.

In support of its contention petitioner relies upon the testimony of Murillo, the surviving joint owner. He testified that in executing the agreement of December 16, 1936, providing that the Crown stock was to be registered in the joint names of the decedent and himself, it was the intention of the parties to make use of the form of a joint tenancy to avoid outside interference in the business, and that in substance and reality he, Murillo, was the actual owner of the stock. We are unwilling to accept Murillo's testimony as to the intentions of the parties, in view of the fact that the lips of the decedent have been sealed by death. We do not regard the agreement of December 16, 1936, as ambiguous. That the decedent believed he was a joint owner of the Crown shares is clearly indicated by the statement in the agreement between the decedent and his widow executed on February 6, 1945. The agreement of release, dated April 20, 1945, to which Murillo was a signatory, also recites that the decedent and Murillo were each owners of one-half of the Crown stock.

Furthermore, the conduct of the parties subsequent to the execution of the agreement of December 16, 1936, as disclosed by the corporate minutes and records, the authorization of the payments of equal salaries and bonuses, and the equal charges against the accounts of both the decedent and Murillo for the shares subsequently issued in their joint names, conclusively show, we think, that the true intent of the parties was joint ownership with the right of survivorship.

The record also establishes that Murillo has agreed to pay the estate tax liability of the estate of decedent, and he is, therefore, the only individual financially interested in this proceeding. In the light of such fact, we think the indisputable documentary proof is to be accepted as establishing the ownership of the Crown stock. We conclude that at the time of the decedent's death all the capital stock of Crown was jointly owned by the decedent and his son Murillo.

Has petitioner established that less than one-half the value of the Crown shares should be included in the decedent's gross estate? We think not. Not only was the decedent the owner of one-half the stock at the time the agreement of December 16, 1936, was executed, but the record establishes that one-half of the subsequently issued

shares of stock were purchased by credits against the decedent's salary and bonus authorized by the directors.

It is contended by the petitioner that the sum of $20,000 which Murillo agreed to pay the decedent's widow under the agreement of release dated April 20, 1946, should be allowed as an offset against the value of decedent's one-half interest. We do not agree. That payment was made pursuant to an agreement made subsequent to decedent's death, and has no bearing on the status of the stock on the date of decedent's death. Whether upon a later sale of the stock by Murillo such payment may be considered in establishing his cost basis we need not now determine. We have, therefore, found as a fact that the amount to be included in the decedent's gross estate for tax purposes is one-half the value of such stock in the amount of $157,663.96.

The second and third issues are allied and will be considered together. The second issue involves real property located at 4909 Sunset Boulevard, Los Angeles, California, and the third issue involves a joint bank account and two trust agreements. The market values of the real and personal property are not in dispute. The petitioner contends that the real property was the sole and separate property of the decedent's widow and no part of its value is includible in decedent's gross estate; and, as to the personal property, the contention is that the same was acquired with community funds and only one-half the fair market value thereof is includible in decedent's gross estate.

This record shows that, regardless of the former status of the real and personal property, the decedent and his widow agreed in writing on February 6, 1945, that their real and personal property, exclusive of the Crown stock, was held by them as joint tenants.

In the State of California the law is well settled that a husband and wife may agree with respect to the character of the property which they hold and may transmute their property from one status to another by agreement. *In re Watkins' Estate*, 16 Cal. 2d 793, 797, 108 P. 2d 417, and authorities therein cited. Under the California code there is a conclusive presumption of the truth of a fact from a recital in a written instrument between the parties thereto. Code Civ. Proc., sec. 1962. We think that by their agreement of February 6, 1945, the decedent and his widow agreed that the status of the Sunset property was jointly owned and that it was so held at the time of his death. In the estate tax return the property was reported as jointly owned, with a claim that the surviving spouse had contributed 16 per cent of its total value. Petitioner has endeavored to establish by the original deed that the property was taken in the name of the surviving spouse and was her separate property. Petitioner did not show the source of the funds from which the property was acquired. The

surviving spouse was not living at the time this proceeding was heard, which presumably accounts for petitioner's inability to establish such fact. Since the petitioner has not shown that the contribution of the surviving spouse was in excess of 16 per cent, the respondent's inclusion of the 84 per cent of the value of the Sunset property is sustained.

A similar situation prevails with respect to the joint bank account and the two trust deeds. In the estate tax return this personal property was reported as jointly owned property of the decedent and his widow, and the full value was included in the decedent's gross estate. Petitioner contends that this personal property was acquired with community funds and only one-half the fair market value should be included in the decedent's estate. Petitioner has made no showing as to what part of such funds represented compensation for personal services or was the separate property of the surviving spouse. Therefore, the full value of such personal property was includible in the gross estate of the decedent. *Estate of Joseph H. Heidt*, 8 T. C. 969, affirmed *per curiam*, 170 F. 2d 1021.

The final issue presents the question whether the three parcels of beach property are includible in decedent's gross estate as transfers made in contemplation of death within the purview of section 811 (c) of the Internal Revenue Code. By virtue of the agreement of February 6, 1945, these beach properties were jointly owned by the decedent and his surviving spouse. On September 25, 1945, the decedent and his widow transferred and conveyed these properties to four of their children. We, therefore, consider the question whether transfers of the beach properties were made in contemplation of death. The issue is factual. On the basis of this record we think the answer must be in the affirmative.

At the time of the transfers on September 25, 1945, the decedent was 79 years of age. He died on February 17, 1946, and within the period the statute presumes a transfer to have been made in contemplation of death. While the presumption is not conclusive it places a heavy burden upon the petitioner. This burden, we think, has not been met. With respect to the Seal Beach property conveyed to two of decedent's sons, the deed reserves to the grantors, or the survivor, a life estate. With respect to the Naples property and the Alamitos Bay lot, the deeds were not offered in evidence. The executrix, who was the donee of the Alamitos Bay lot, was ill and unavailable as a witness and the evidence respecting the last two mentioned properties was very meager.

The record establishes that pursuant to a written agreement executed February 6, 1945, wherein the decedent and his widow executed mutual wills, these identical properties were devised to these same children to whom the *inter vivos* gifts were made. Concurrently with the execution of the deeds of transfer on September 25,

1945, the decedent, with the written consent of his widow, the other joint tenant, executed a codicil to his will deleting from his will the paragraphs devising the said beach properties. These circumstances together with the other factors referred to lead us to conclude that the transfers were testamentary in character, and, therefore, made in contemplation of death within the meaning of section 811 (c) of the Code.

Having determined the transfers were made in contemplation of death, the further question arises as to whether the entire or only one-half of the fair market value of such properties is to be included in the decedent's gross estate.

At the time of the gifts of the beach properties to the children of the decedent, such properties were jointly owned by decedent and his surviving spouse and both joined in executing the deeds of transfer.

In the case of *Sullivan's Estate* v. *Commissioner*, 175 F. 2d 657, reversing 10 T. C. 961, one of the issues involved was a transfer of jointly owned property by the decedent and his wife to their son which was found to have been made in contemplation of death. The United States Court of Appeals for the Ninth Circuit held that, under California law, applicable to the instant case, one joint tenant cannot sell, convey or dispose of more than his or her undivided half interest, and therefore only one-half of the property transferred was includible in the decedent's gross estate as a transfer in contemplation of death within section 811 (c) of the Internal Revenue Code. In the course of its opinion the Court of Appeals said:

It has long been established that what constitutes an interest in property held by a person within a state is a matter of state law. *Fernandez* v. *Wiener*, 326 U. S. 340, 355–357, 66 S. Ct. 178, 90 L. Ed. 116, determining by Louisiana law what is transferred of community property on the death of the husband and the shiftings of interest between the two spouses. *Moffitt* v. *Kelly*, 218 U. S. 400, 31 S. Ct. 79, 54 L. Ed. 1086, 30 L. R. A., N. S., 1179.

One of the factors in an owner's interest in property is the owner's power to transfer it. Congress has the power to impose an excise tax on the transfer when made, but has not enacted any law taxing gifts which determines the quantum of the transfer and thereby makes the state law not controlling.

Under the law of California, one joint tenant cannot dispose of anything more than his own interest in the jointly held property. *People* v. *Marshall*, 8 Cal. 51; *Oberwise* v. *Poulos*, 124 Cal. App. 247, 12 P. 2d 156. "During the lives of the tenants, the rules regulating the transfer of their interests are substantially the same, whether they hold in joint tenancy or in common. Neither a joint tenant nor a tenant in common can do any act to the prejudice of his co-tenants in their estate." *Stark* v. *Barrett*, 15 Cal. 361, 368. Where a joint tenant has purported to convey more than his interest, his transferee is held to have taken only the interest that could be transferred, i. e., the transferor's share. *Stark* v. *Barrett, supra; Swartzbaugh* v. *Sampson*, 11 Cal. App. 2d 451, 54 P. 2d 73.

It is obvious that the half interest conveyed by the wife was not in contemplation of death. She is still living.

The decision of the Tax Court is reversed on the issue of the gift to the son.

We think that the *Sullivan* case correctly interprets section 811 (c) as including in decedent's gross estate only his one-half interest in the jointly owned property as a transfer in contemplation of death. If this result is contrary to the basic purpose of the estate tax statute and there is a loophole in section 811 (c), the remedy lies with Congress.

We, therefore, hold that only one-half the conceded fair market value of the beach properties is to be included in the decedent's gross estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissents.