[Civ. No. 24521.   Second Dist., Div. Three.   Nov. 23, 1960.]

EVELYN HOOPER, Appellant, v. BYRON JACKSON
PUMPS, INC. (a Corporation) et al., Respondents.

Roger J. Pryor and Pauline Day Bakst for Appellant.

Dryden, Harrington, Horgan & Swartz and Robert A.
Klein for Respondents.

BISHOP, J. pro tem.*—The issue on this appeal is quite simple: Did the trial court err in reading to the jury sections 525.1 and 551 of the Vehicle Code? The facts of the case did not bring those sections into play, and we have concluded that, in this particular case, the error in giving the instructions was prejudicial.

Before dealing with the question of the instructions we dispose of respondents' contention that plaintiff's appeal should be dismissed because she failed to comply with rule 4(b), Rules on Appeal. This was an action, tried before a jury, for damages resulting to the plaintiff personally when her automobile was bumped by one driven by the individual defendant in the business of the defendant corporation. The jury returned a verdict in defendants' favor, and a judgment that plaintiff take nothing followed. Plaintiff filed a notice of appeal from the adverse judgment, together with a request ". . . for a partial reporter's transcript of the proceedings on April 6, 7, 8 and 9, 1959 during the trial, which shall include everything except the medical testimony of plaintiff's doctors and the argument of counsel at the conclusion of the trial. A transcript of the proceedings wherein the jury requested additional instruction after beginning deliberation, is explicitly requested, including all the remarks of the Court and counsel.''

This request for a partial transcript was not accompanied by a statement of the points to be raised by the plaintiff on appeal, a condition imposed by rule 4(b) on the right to order a partial transcript. The defendants objected to a partial transcript, without a statement of the points to be raised; their objection was sustained by the trial court; plaintiff filed, August 6, 1959, Points to be Raised on Appeal. Whether these points are sufficiently sharp to satisfy the purpose of the rule, we need not determine, for the defendants did not, as the respondents did in *Haskins* v. *Crumley* (1957), 152 Cal.App. 2d 64 [312 P.2d 276] and in *Marshallan Mfg. Co.* v. *Brack* (1959), 172 Cal.App.2d 22 [342 P.2d 26], move for a dismissal of the appeal. The appellate court, in those cases, indicated that a dismissal would be ordered unless the appellant took advantage of the opportunity given, to file the missing statement. Now that the briefs are in, in this case, the defendants are more fully informed as to the points the plaintiff ''intends'' to present than they would be if the statement required by the rule had been furnished. Beyond

---

*Assigned by Chairman of Judicial Council.

doubt the 300-page reporter's transcript is quite adequate fairly to present the points that are raised, without the doctor's testimony or the argument of counsel to the jury. If the latter would have been of any benefit to the defendants, they should have moved to obtain it within a reasonable time after the filing of plaintiff's opening brief, March 17, 1960. This is not a game in which a party is to be declared "out" just because he fails to touch a base as he passes.

Turning now to the merits of the appeal we find very little inconsistencies between the stories told from the witness stand by the plaintiff and the defendant driver. The plaintiff was headed north on a boulevard, in the lane next to the double center line. The defendant's was the next car in the lane back of the plaintiff. They both stopped at an intersection in obedience to the red traffic light. When the green signal invited them to proceed, the plaintiff, seeing that a southbound car desired to make a left turn across plaintiff's lane, waited for it to do so, signaling for it to go ahead. This did not please the defendant—and we do not wonder, as the northbound cars on the right were advancing so that the southbound car could not turn—and he honked repeatedly and vigorously at the plaintiff. She started forward; so did the defendant. The plaintiff again came to a stop but the defendant, his eyes on his rear view mirror, failed to stop in time, and bumped into plaintiff's car. There is some difference between the version of the plaintiff and that of the defendant respecting the events that followed her first, halting, movement ahead after the signal turned green, but none of significance on this appeal. We have related the facts as testified to by the defendant.

At the request of the defendants the trial court read to the jury the provisions of sections 525.1 and 551 of the Vehicle Code in effect in February, 1957, the time of plaintiff's accident. Section 525.1 of the Vehicle Code provided that: "Notwithstanding the prima facie speed limits, upon all highways any vehicle proceeding in a direction at less than the normal speed of traffic in such direction at such time shall be driven in the right hand lane for traffic or as close as practicable to the right hand edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway." Section 551 of the Vehicle Code, relating to vehicle turning left at an intersection provided: "(a) The driver of a vehicle within an intersection

intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. (b) Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn."

Section 551 may have been pertinent, as we understand defendants' argument on appeal, to give a basis for their contention that as the plaintiff had the right of way the defendant driver thought that plaintiff would take it, and so, as a reasonable man, did not anticipate that she would not keep going after she started. The trouble with this argument is that that was not the purpose of the instruction, as conveyed to the jury. Instead, immediately after reading sections 525.1 and 551 the trial court continued, as the defendant had requested: "BAJI No. 149 (Revised) Now, if a party to this action violated any of the sections of the Vehicle Code just read to you, a presumption arises that he or she was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

"To prove that a violation such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who committed the violation did what might reasonably have been expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances."

Of its own motion the trial court gave this further instruction: "BAJI No. 149-B Also, in this action, a violation of law is of no consequence unless it was a proximate cause of or contributed as a proximate cause to an injury found by you to have been suffered by the plaintiff."

Plainly, section 525.1 had no place in the juror's thoughts. There was some evidence that the plaintiff *had been* driving some 20 or 25 miles an hour, slower than the flow of traffic along the street, but if this was a violation of the law, by no stretch of the imagination could it be said to be the proximate cause of the accident that happened after all northbound traffic had stopped, and she started up again. Nor was

a violation of section 551 involved. Neither party to this action intended to turn left, nor did either do so, and there was no violation of the section "charged" in this case. The section does not make it an offense not to take the right of way when it is yours. Indeed, but for what happened, after the case was submitted to the jury, it could well be argued that the two sections were so very irrelevant that while the jurors may have wondered why they were given, having wondered, they paid no further heed to them.

The instructions may not be so casually brushed aside, however. At the beginning of the second day's deliberations the foreman of the jury requested, on its behalf, that all the instructions on negligence be reread, and this was done, including those we have quoted. About an hour and a half later the jury returned, asking that some of the instructions be reread. "It is on this Code 525, left-hand turn. That is, both of the ones that you read." Section 525.1 was reread and a juror said: ". . . I think they got the numbers mixed up." So 551 and 525.1 were read again, then again, followed, the last time, by BAJI's 149 (Revised) and 149-B. At the request of the plaintiff, the BAJI instructions were read once more. After a bit of discussion section 551 was again read, followed by the foreman's statement: "That doesn't answer a question that I am asked, but I don't think—— I don't know how you would be able to answer it." The foreman added, in response to the trial court's question, "Would it do any good to read of [sic] these over again?" that "it would not." A 9-3 verdict was returned.

Under the circumstances of this case defendants' requested instructions should not have been read once, let alone repeatedly, and we cannot conclude other than that the error in reading them was prejudicial.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.