[Civ. No. 20657. First Dist., Div. One. June 20, 1963.]

CHARLES A. THOMPSON JR., et al., Plaintiffs and Appellants, v. ROBERT D. BOYD, Individually and as Coexecutor, etc., et al., Defendants and Appellants; ALBERT E. HILL, as Administrator With the Will Annexed, etc., Defendant and Respondent.

L. L. Steele for Plaintiffs and Appellants.

William F. Worthington, Jr., and Worthington, Fields & Worthington for Defendants and Appellants.

J. F. Coakley, District Attorney, and Johon Marchant, Deputy District Attorney, for Defendant and Respondent.

MOLINARI, J.—Plaintiffs[1] and certain defendants[2] have appealed from certain portions of the judgment and from certain findings of fact and conclusions of law in this action for declaratory relief. ■ No appeal lies from the findings of fact or conclusions of law.[3] Therefore, the purported appeals by the respective parties from the findings of fact and conclusions of law must be dismissed.

### The Record

On September 16, 1949, Alfred Ross Moulton, hereinafter referred to as Alfred, and Emma Chase Moulton, hereinafter referred to as Emma, were husband and wife. On that day they executed a will entitled "Conjoint or Mutual Will," bearing the date of September 16, 1949. Thereafter, and on October 29, 1951, and during the life of Alfred, Emma executed another will. This will contained a provision revoking all former wills. Alfred died on August 10, 1953. At the time of his death the only property in Alfred's name was a $25 United States Savings Bond and savings bank accounts totaling $487.45 in his and Emma's names jointly. The

---

[1]The action is prosecuted by several plaintiffs who claim to be residuary legatees named in an instrument dated September 16, 1949, and purporting to be the last will and testament of one Alfred Ross Moulton. These plaintiffs have been joined by the coexecutors of the will of one of the devisees named in the aforementioned will of Alfred Ross Moulton.

[2]The appealing defendants, hereinafter referred to as defendants, are the coexecutors of the will of Emma Chase Moulton.

[3]*Estate of Eesler*, 43 Cal.2d 726, 739 [278 P.2d 1]; *Brice* v. *Department of Alcoholic Beverage Control*, 153 Cal.App.2d 315, 319 [314 P.2d 807]; *Estate of Nielsen*, 204 Cal.App.2d 357, 363-364 [22 Cal.Rptr. 260].

aforementioned will dated September 16, 1949, was not then offered for probate. On January 22, 1954, Emma made what purported to be an holographic will. This will also contained a provision revoking all former wills and codicils. Emma died on July 14, 1958. Her will, dated October 29, 1951, was offered for probate as was the holographic will dated January 22, 1954. A contest ensued and the holographic will was admitted to probate as Emma's last will. Thereafter, and on February 18, 1960, the aforementioned joint will dated September 16, 1949, was offered for probate as Alfred's last will; it was so admitted and the public administrator was appointed as administrator with the will annexed. Plaintiffs then brought the present action for declaratory relief against defendants as the executors of Emma's holographic will, and also against the said administrator of Alfred's estate.[4] The gist of the complaint is that the joint will of September 16, 1949, was an irrevocable contract devising and bequeathing all of Emma's and Alfred's properties to the devisees and legatees named therein; that Emma did not have the right to revoke the same; and that Emma's holographic will was of no force and effect. Defendants filed a general denial thereto and three affirmative defenses, to wit: (1) that the said joint will had been admitted in evidence in the aforesaid will contest and that upon the admission of the holographic will as Emma's last will any dispute between plaintiffs and defendants was res judicata; (2) that Emma did not receive any benefits from the said joint will; and (3) that the complaint was barred by the statute of frauds.

The trial court found that the will dated September 16, 1949, was a joint and mutual will, which was revocable; that said joint will did not constitute a binding contract that neither Alfred or Emma would revoke said will during their lifetime; and that all of the property in Emma's and Alfred's names at Alfred's death was community property. From these findings the court below made its conclusions of law that each of the spouses owned an undivided one-half interest in said property; that Emma had the power of testamentary disposition over one-half of said property; and that Alfred had the power of testamentary disposition over the other half of said property, subject to a life interest in Emma with the remainder vested in the residuary legatees under the said joint will. A judgment purporting to be based on these findings and conclusions was entered. Plaintiffs appeal from ''parts of

---

[4] The said administrator is not a party to this appeal.

the said judgment and the Findings'' declaring that the joint will did not constitute an irrevocable contract between Alfred and Emma,[5] and that part thereof adjudicating that the said community property should be apportioned between Emma's estate and Alfred's estate subject to the payment and adjustment for certain debts.[6] Defendants appeal from ''parts of the said judgment and the findings'' declaring that at the time of the death of Alfred the property in question was the community property of Alfred and Emma; from that portion of the judgment decreeing that at Alfred's death Emma had a fee interest in only one-half of said property and a life estate in the other half; and from that portion of the judgment decreeing that plaintiffs have an interest in one-half of the net assets in Emma's estate.

## Contentions of the Parties

Plaintiffs contend:

(1) That the joint and mutual will of September 16, 1949,

---

[5]No such adjudication is made in the judgment.

[6]''4. Said property shall be apportioned and divided between the estate of Emma Chase Moulton and Alfred Ross Moulton, as follows:

''a) After deducting from said property an amount equal to all debts owed by Emma Chase Moulton at the time of her death, one-half of said property shall be deemed as property subject to her power of testamentary disposition and shall be administered in her estate and distributed according to the terms of her last will and testament.

''b) The remaining one-half of said property shall be deemed· as property in which she had a life estate and shall be transferred to E. M. King, Coroner-Public Administrator of the County of Alameda, State of California, as administrator with the will annexed of the Estate of Alfred Ross Moulton, the successor in office to defendant Albert E. Hill, Public Administrator, and shall be administered in the Estate of Alfred Ross Moulton and distributed according to the terms of his last will and testament.

''c) The division of the properties as set forth hereinabove shall be made as soon as the amount of the debts owed by Emma Chase Moulton, at the time of her death, have been determined and paid. There is presently pending before the Superior Court of the State of California, for the County of Alameda, a civil action by L. L. Steele against the Estate of Emma Chase Moulton, Civil Action No. 310,388, to recover for services rendered to Emma Chase Moulton prior to her death in the sum of $7,309.50, and any judgment rendered thereon in favor of said plaintiff shall be treated as a debt of Emma Chase Moulton and shall be paid from the properties on hand at the time of her death, prior to the division of the properties as set forth hereinabove.

''5. When the debts owed by Emma Chase Moulton at the date of her death have been determined and paid, defendants Robert D. Boyd and Alice E. Boyd, co-executors of the Estate of Emma Chase Moulton, deceased, are directed to file a petition in the probate proceedings of the Estate of Emma Chase Moulton, requesting an order of the probate court instructing and directing them to make a division of the properties in their possession, as such executors, according to the term of this Judgment.''

constituted an irrevocable contract, and that therefore Emma's later and separate will was of no force or effect.

(2) That in the event that it should be determined that the joint will was not an irrevocable contract, then the trial court erred in deciding that one-half of the community estate is subject to probate in the husband's estate and the other half in the wife's estate. In this respect it is plaintiffs' contention that the entire community estate is first subject to probate in the husband's estate pursuant to Probate Code section 202.[7]

Defendants contend:

(1) That the joint and mutual will of September 16, 1949, does not constitute a contract prohibiting either party from revoking the same.

(2) That all of the assets at the date of Alfred's death, excepting a $25 savings bond, were the separate property of Emma.

(3) That the will of September 16, 1949, is ineffective as Alfred's will except to dispose of a $25 savings bond.

### The Effect of the Will of September 16, 1949

The will in question was entitled "Conjoint or Mutual Will of Emma Chase Moulton and Alfred Ross Moulton (Husband and Wife)" and in the first paragraph it is provided that "We . . . do make publish and declare this to be our Last Conjoint and Mutual Will and Testament, in the following manner, that is to say: . . ." (The provisions of the will thereafter follow.) ▊ The distinction between joint and mutual wills is stated as follows in *Daniels* v. *Bridges*, 123 Cal.App.2d 585 [267 P.2d 343]: "A joint will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them as their respective wills. It is not necessarily either mutual or reciprocal. It is, in legal effect, the separate will of each of the persons executing it. ▊ The fact that it is executed by both or all of such persons does not affect its validity or effect as the will of any one of them. ▊ Mutual wills are the separate wills of two or more persons which are reciprocal in their provisions." (P. 588, fn. omitted.) ▊ A will may, of course, be both joint and mutual. ▊ Accordingly, a joint and mutual will is one instrument executed by two or

---

[7]Prob. Code, § 202 provides: "Community property passing from the control of the husband . . . by reason of his death . . . is subject to his debts and to administration and disposal under the provisions of Division III of this code; . . ." (Div. III provides for the "Administration of Estates of Decedents.")

more persons, the provisions of which are reciprocal. (*Daniels* v. *Bridges, supra,* pp. 588-589; *Van Houten* v. *Whitaker,* 169 Cal.App.2d 510, 514 [337 P.2d 900].) It is, therefore, without question that the subject will is both a joint and a mutual will, because it consists of one instrument, jointly executed by Alfred and Emma, and its provisions are reciprocal.

Each of such wills, in one instrument, is a unilateral act, and its execution creates no rights in the legatees or devisees, as the will is ambulatory until the death of the testator. Accordingly, a joint and mutual will may be revoked by any of the testators in like manner as any other will. (Prob. Code, § 23; *Daniels* v. *Bridges, supra,* p. 589; *Notten* v. *Mensing,* 3 Cal.2d 469, 473 [45 P.2d 198].)[8] Moreover, because a will is ambulatory until death, it may be revoked notwithstanding an agreement not to revoke. (*Brown* v. *Superior Court,* 34 Cal.2d 559, 565 [212 P.2d 878]; *Notten* v. *Mensing, supra,* p. 473; *Goldstein* v. *Hoffman,* 213 Cal.App. 2d 803, 812 [29 Cal.Rptr. 334].)

It is also well settled that a person may contract to make a particular disposition of his property by will (*Brown* v. *Superior Court, supra,* pp. 563-565; *Sonnicksen* v. *Sonnicksen,* 45 Cal.App.2d 46, 52-55 [113 P.2d 495]; *Daniels* v. *Bridges, supra,* p. 589), provided such contract is in writing. (Civ. Code, § 1624, subd. 6; *Notten* v. *Mensing, supra,* pp. 473-474; *Shive* v. *Barrow,* 88 Cal.App.2d 838, 843 [199 P.2d 693]; *Potter* v. *Bland,* 136 Cal.App.2d 125, 131 [288 P.2d 569]; *Van Houten* v. *Whitaker, supra,* p. 515.) The contract to make a will, however, may be in the will itself (*Chase* v. *Leiter,* 96 Cal.App.2d 439, 450 [215 P.2d 756]; *Van Houten* v. *Whitaker, supra,* p. 515), and a single instrument may constitute both a will and a contract. (*Estate of Watkins,* 16 Cal.2d 793, 797 [108 P.2d 417]; *Van Houten* v. *Whitaker, supra,* p. 515.) Accordingly, where a party contracts to make a particular disposition of property by will, the agreement necessarily includes a promise not to breach the contract by revoking the will and failing to dispose of the property as agreed. (*Brown* v. *Superior Court, supra,* pp. 564-565; *Brewer* v. *Simpson,* 53 Cal.2d 567, 589 [2 Cal. Rptr. 609, 349 P.2d 289]: *Goldstein* v. *Hoffman, supra,* p. 811.) The rights of the parties to such an agree-

---

[8]Prob. Code, § 23 provides: ''A conjoint or mutual will is valid, but it may be revoked by any of the testators in like manner as any other will.''

ment depend upon the contract, and the revocation of the will or other breach of the contract does not prevent the intended devisee or legatee from enforcing the contractual obligations. (*Brown* v. *Superior Court, supra,* p. 565; *Daniels* v. *Bridges, supra,* p.p. 589-590; *Goldstein* v. *Hoffman, supra,* p. 811.) ▮ The party who agrees to make a particular disposition of property by will pursuant to such a written agreement is estopped from making any disposition of the property different from that contemplated, and such estoppel cannot be avoided by his subsequent will in disregard of the terms of the contract. *(Goldstein* v. *Hoffman, supra,* p. 812.) The basis of the estoppel lies in the acceptance of the benefits of the agreement by the promisor. (*Sonnicksen* v. *Sonnicksen, supra; Goldstein* v. *Hoffman, supra,* p. 812.)

▮ A contract to make a particular disposition of property by will is breached only if it has not been complied with at the time of the promisor's death. (*Ludwicki* v. *Guerin,* 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415]; *Goldstein* v. *Hoffman, supra,* p. 812.) ▮ In case of a breach the promisee has several remedies, such as an action at law for damages, and equitable relief in the form of "quasi specific performance." (*Brown* v. *Superior Court, supra,* pp. 563-564; *Ludwicki* v. *Guerin, supra,* p. 130; *Goldstein* v. *Hoffman, supra,* p. 812.)

▮ In the present case no extrinsic evidence was offered or presented to show that Alfred or Emma had entered into any oral or written contract or agreement apart from the will itself. Accordingly, the construction of the will in question is one of law. ▮ In making such interpretation we are not bound by that of the trial court, but it is our duty to make the interpretation in accordance with applicable principles of law. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; *Ziganto* v. *Taylor,* 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229]; *Estate of Black,* 211 Cal.App.2d 75, 83 [27 Cal.Rptr. 418].) Our primary inquiry, therefore, is directed to whether the said joint and mutual will contains within its provisions a valid contract which establishes a legal obligation to forbear revocation. ▮ "The mere fact that a joint will contains reciprocal, or similar or identical, provisions is not of itself sufficient evidence of a contract, nor is it enough to establish a legal obligation to

forbear revocation in the absence of a valid contract."
(*Daniels* v. *Bridges, supra,* p. 589, fn. omitted; *Lich* v. *Carlin,*
184 Cal.App.2d 128, 133 [7 Cal.Rptr. 555]; *Rolls* v. *Allen,*
204 Cal. 604, 608 [269 P. 450]; *Notten* v. *Mensing, supra,*
p. 477.) ▆ Neither are declarations of testamentary
intentions sufficient to constitute such a contract; there must
be an agreement between the parties themselves. (*Lich* v.
*Carlin, supra,* p. 133.)

▆ In the present case Emma had a legal right to revoke
the joint and mutual will of September 16, 1949, *as a will.*
Whether such a revocation constituted a breach of contract
sufficient to raise an estoppel and thus give rise to a con-
structive trust on the property in question in favor of the
intended legatees and devisees depends upon whether Alfred
and Emma entered into a contract to the effect, that each, in
consideration of the promise of the other, would make the
said will and that it would not be revoked. We must, there-
fore, determine whether the subject will indicates that Alfred
and Emma agreed between themselves as to the testamentary
plan urged by plaintiffs.

▆ The pertinent language of the will is as follows:
"We . . . do make publish and declare this to be our Last
Conjoint and Mutual Will and Testament, in the following
manner, that is to say: . . . 2. That upon the death of either
of us, such decedent does hereby will, devise and bequeath
unto the survivor all property that such testator may be pos-
sessed of at the time of such death, both real, personal and
mixed, to have and to hold and use absolutely and unrestricted
as long as such survivor shall live, and all such property is
hereby declared to be the community property of these tes-
tators. 3. That upon the death of both of these testators, all
property then owned by us, or which may be hereinafter
acquired and whether real, personal or mixed is hereby willed,
devised and bequeathed as follows, to wit: [Then follow vari-
ous detailed dispositions to legatees and devisees.]" Aside
from the phrase "and all such property is hereby declared
to be the community property of these testators," the said
language is purely testamentary in character. There is no
express language stating that the will was not revocable, nor
is there anything to indicate a contractual intent or to indi-
cate that the disposition to the respective spouses or to the
remaindermen was the result of a contract as would deprive
the surviving spouse of the right of revocation. The con-
struction given this language by the trial judge that the in-

strument in question does not by its terms constitute an irrevocable and binding contract between Alfred and Emma that neither would revoke the terms of said will is a reasonable and proper interpretation.

In *Daniels,* husband and wife made a joint will by which each of them bequeathed and devised all of his and her property " *'after the death of the two of us'* " to the plaintiff. (P. 587; italics added.) There, as here, there was no extrinsic evidence of the making of a contract to execute the joint will. The reviewing court held that such language would not support or compel the conclusion that the parties intended or undertook to bind themselves irrevocably on the prior death of either. In *Rolls,* the spouses executed a conjoint and mutual will which provided that all of their property (which was community property) should be held by the survivor, during his or her lifetime, the use and income thereof to be enjoyed by such survivor as he or she should deem best. It then provided that at the death of the survivor the balance of the estate, with the exception of two cash bequests, was to be equally divided among the husband's children by a previous marriage. The husband predeceased the wife, who thereafter made a will revoking as to herself the conjoint will and devising her share of the community property to her daughters by a previous marriage and a grandson. In holding that the mutual will was not executed pursuant to any contract and therefore was revocable, the appellate court upheld the trial court's finding that the reciprocal provisions in the mutual will were solely referable to the marriage relation between the parties. On page 608 of the opinion we find the following statement: "To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and presumptions will not and should not, in such cases, take the place of proof. [Citation.] The mere execution of the will in question, therefore, has no tendency to show that there is a contractual obligation to make such a will." (204 Cal. 604.)

A review of the cases cited by plaintiffs discloses that they deal with joint and mutual wills which contained contractual language within the instrument itself or which referred to an agreement between the parties. In *Van Houten,* the will contained the following provisions: " *'Both of us agree* that upon the death of the last one of us the estate remaining shall be divided in half. . . .'" (P. 513 of 169 Cal.App.2d; italics

added.) Moreover, in another paragraph of the will, it was provided that if the survivor of the two should fail to survive the distribution of the estate of the one who died first, then *the estate should be considered as one* and one-half of it should go to certain named persons. *James* v. *Pawsey,* 162 Cal.App.2d 740 [328 P.2d 1023], does not help plaintiffs. There, the parties *executed both a separate agreement and mutual wills* pursuant to the agreement. The court held that the purpose of the agreement was *to pool all of the property of the parties* " 'for the mutual advantage of the parties'. . . .' " (P. 749.) The wording of the joint and mutual will in *Chase* v. *Leiter, supra,* 96 Cal.App.2d 439, was as follows: " 'We . . . , husband and wife, . . . being desirous of ultimately disposing of our property . . . according to a plan and program for that purpose which we have heretofore orally agreed upon and jointly adopted, do hereby make, publish and declare this instrument to be jointly as well as severally our Last Will and Testament. . . .' " (P. 442.) The case of *Alocco* v. *Fouche,* 190 Cal.App.2d 244 [11 Cal.Rptr. 818], discloses that the pertinent language was as follows: " 'We . . . , husband and wife . . . do each mutually, in consideration of the other making his will, and of the provisions made herein, in each other's behalf, make this our joint and mutual Will and Testament and agree that the same cannot be changed or varied by either, without the consent in writing of the other. . . .' " (P. 246.) In *Lake* v. *Jackson,* 191 Cal.App.2d 372 [12 Cal.Rptr. 652], the crux of the case was an *oral agreement* between husband and wife that all property accumulated by them during marriage would go to the survivor and would then be left by the survivor to the wife's daughters by a previous marriage. There the husband made a will conforming to the agreement, but, after the wife's death, made a new will in favor of his second wife. The reviewing court held that the finding of the trial court that the said oral agreement had been made was supported by the evidence. Likewise, in *Lich* v. *Carlin, supra,* 184 Cal.App.2d 128, the issue centered on an oral agreement whereby the husband and wife agreed that each would leave to the other all property owned at death and the survivor would leave all the remaining property to the wife's daughter by a former marriage. Mutual wills to that effect were executed by the parties. The wife died first and the husband remarried. The husband then executed a will in favor of his second wife. After the husband's death his stepdaughter sought to impress

his estate with a constructive trust predicated upon the said oral agreement. A judgment of nonsuit in favor of the second wife was reversed on the ground that the evidence was sufficient to require the finder of fact to determine whether or not such an oral agreement had been entered into between the husband and his first wife.

Plaintiffs' further contention that *Estate of Watkins, supra,* 16 Cal.2d 793, is controlling in the instant case is equally without merit. In *Watkins* the problem was one of determination of the nature of property, whether it was community or held in joint tenancy. In that case, the husband and wife executed a joint and mutual will which read in part: " 'We declare that the property here disposed of was accumulated and acquired during our marriage and is community property.' " (P. 795.) The court held that this declaration was sufficient to constitute an agreement between the spouses fixing the status of their property as community property. The rationale of *Watkins* is that a husband and wife may agree with respect to the character of the property which they hold and that they may transmute their property from one status to another by an agreement which ordinarily need not be executed with any formality. (P. 797.) *Watkins* was not confronted with the contractual formality discussed above as necessary to indicate an intent to establish a legal obligation to forbear the revocation of a will. The essence of its holding is that the statement in the will, which it was construing, was sufficient as a matter of law to show acquiescence and agreement that the property of the spouses constituted, for the purpose of disposition under the will, the community estate of the respective parties. (P. 798.)

Considerable stress is placed by plaintiffs upon the plural designation of the testators throughout the will. This factor, they assert, is indicative of a contractual intention. Suffice it to say, the use of the plural designated "we" and "our" is commonplace and usual language in a joint will, and, in the absence of other circumstances indicating contractual intent, is no more than the grammatical expedient by which a single testamentary instrument is used as the will of two or more persons. Although not bound by the construction adopted below, we are of the view that the trial court was correct in finding that the joint and mutual will in question was not a contract which established a legal obligation forbearing its revocation.

## The Status of the Property of the Spouses

The trial court found that at Alfred's death there was property standing in the names of the respective spouses as follows: The sum of $487.45 in bank accounts in the names of Alfred and Emma, as joint tenants with right of survivorship; a $25 United States Savings Bond in Alfred's name; and certain monies, United States Savings Bonds, shares of corporate stock, a life interest in certain real property, and other personal property in Emma's name of the total value of $21,-251.79. This finding is undisputed, being based upon a stipulation entered into between the parties. The court below found that all of the aforesaid property aggregating $21,-764.24 in value was, at the time of Alfred's death, the community property of Alfred and Emma. No evidence was adduced at the trial concerning the status of said property excepting the aforesaid will of September 16, 1949. As indicated above, the said will contained the following provision: "2. That upon the death of either of us, such decedent does hereby will, devise and bequeath unto the survivor all property that such testator may be possessed of at the time of such death, both real, personal and mixed, to have and to hold and use absolutely and unrestricted as long as such survivor shall live, *and all such property is hereby declared to be the community property of these testators.*" (Italics added.) Defendants argue that even though the language we have underscored is subject to the interpretation that it is an agreement or declaration that all such property would be community property at the death of either of such spouses, such agreement or declaration was revoked before Alfred's death by the execution of another will by Emma prior to Alfred's death.

In *Estate of Watkins, supra,* 16 Cal.2d 793, it was held that the following language in a joint and mutual will, " 'We declare that the property here disposed of was accumulated and acquired during our marriage and is community property' " (p. 795) constituted an agreement between the spouses fixing the status of their property as community property. On page 798 of the opinion in said case we also find this language: "But even if the declaration found in the joint and mutual will be treated merely as a recital in the written instrument executed by the spouses, the same result must follow as there is a conclusive presumption of 'The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; . . .' (Code Civ. Proc., § 1962, subd. 2.)" And

in *Chase* v. *Leiter, supra,* 96 Cal.App.2d 439, the language in a joint will executed by husband and wife was as follows: " '[W]e therefore agree and stipulate that all said property is and shall be deemed to be community property.' " (P. 443.) *Chase* follows the holding of *Estate of Watkins* and adopts the rationale of the latter case that a husband and wife may agree with respect to the character of the property and change it from one status to another by such an agreement. *Estate of Watkins* and *Chase* both recognize that a single instrument may constitute both a will and a contract, and that while a will is ambulatory and not effective until the death of the testator, the will as a contract becomes effective as soon as executed. (*Estate of Watkins, supra,* p. 797; *Chase* v. *Leiter, supra,* p. 450.)

Neither *Estate of Watkins* or *Chase* involved a situation where one of the joint testators revoked the joint will. ▓▓▓ However, if an instrument is both a will and a contract, the fact that it is revoked as a will does not necessarily abrogate it as a contract. While a joint and mutual will may be unilaterally revoked (Prob. Code, § 23), a contract remains alive until it has been terminated, either according to its own stipulations for termination or through the acts of the parties evidencing a cancellation, rescission, or abandonment. (*Groves* v. *Superior Court,* 62 Cal.App.2d 559, 565 [145 P.2d 355]; *Busch* v. *Globe Industries,* 200 Cal.App.2d 315, 320 [19 Cal. Rptr. 441]; *McLaughlin* v. *McLaughlin,* 17 Cal.App. 699, 701 [121 P. 704].) ▓▓▓ The question of whether a contract has been cancelled, rescinded, or abandoned is a mixed question of law and fact which is addressed to the trial court. (*Ross* v. *Frank W. Dunne Co.,* 119 Cal.App.2d 690, 698 [260 P.2d 104]; *Pico Citizens Bank* v. *Tafco Inc.,* 201 Cal.App.2d 131, 136 [19 Cal.Rptr. 905]; and see Civ. Code, §§ 1689 and 1691, with reference to rescission.)

In the case at bench all that the lower court had before it was the will of September 16, 1949, containing the declaration aforesaid with respect to community property and evidence that such will was revoked by Emma by virtue of a subsequent will executed by her. This was a unilateral act on the part of Emma. There is nothing in the record to indicate that Alfred had any knowledge of such revocation or that he acquiesced thereto. Notwithstanding such revocation, the joint and mutual will of September 16, 1949, under the authority of *Estate of Watkins,* continued to remain in force as an agreement between the spouses fixing the status of their prop-

erty as community. The language in *Estate of Watkins* was similar to that used in the present case. The pertinent language in *Estate of Watkins* is: " '*We declare that the property here disposed of* was accumulated and acquired during our marriage and *is community property.*' " (P. 795; italics added.) ██ In the instant case the vital language is as follows: "[S]uch decedent does hereby will . . . *all property that such testator may be possessed of at the time of such death . . . and all such property is hereby declared to be the community property of these testators.*" (Italics added.)

██ In each case the will being ambulatory, each of the testators could only speak of the property possessed at the time of his or her death, but they could, as held in both *Estate of Watkins* and *Chase,* agree *in praesenti* that the status of the property held by the spouses at the time of the death of the first spouse to die was community property. Such an intention is implicit because the community is dissolved by death and the community status of the property disappears with the community. (See *Estate of Hudson,* 158 Cal.App.2d 385, 389 [322 P.2d 987].)

██ In the case at bench the declaration in question was sufficient as a matter of law to constitute an agreement between the spouses fixing the status of their property as community property. ██ The said declaration, moreover, constituted, under Code of Civil Procedure section 1962, subdivision 2, a conclusive presumption of the fact that the status of the property of the spouses upon the death of the first to die was community property. This presumption follows from the truth of the facts reciting such status in the written instrument executed by both spouses, i.e., the joint and mutual will of September 16, 1949. ██ The said agreement, as well as said recital therein, remained alive until Alfred's death, there being no evidence adduced that prior to such death said agreement was cancelled, rescinded, or abandoned. Accordingly, the court below was correct in its determination that all of the property possessed by both spouses at the time of Alfred's death was the community of such spouses, notwithstanding that the same stood in the individual names of the spouses or in their joint names as joint tenants. ██ It is the settled law of this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired as joint tenants or in the sole name of one of the spouses may be shown to be actually community property according to. the

intention, understanding, or agreement of the parties. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757-758 [146 P.2d 905]; *Mears* v. *Mears*, 180 Cal.App.2d 484, 499-500 [4 Cal.Rptr. 618]; and see *Chase* v. *Leiter, supra,* p. 450, and *Estate of Watkins, supra,* pp. 797-799.)

### The Administration of the Respective Estates

The trial court, after finding that all of the property held by the two spouses at the time of Alfred's death was community property, ordered that said property be apportioned and divided between the estates of the two spouses as follows: That there should first be deducted from said community estate all debts owed by Emma at the time of her death; that one-half of the property remaining after such deduction be deemed property subject to her testamentary disposition and administration in her estate and distributed according to her last will (the holographic will of January 22, 1954); that the remaining one-half after the deduction of such debts be administered in Alfred's estate and distributed according to his last will (the joint and mutual will dated September 16, 1949); that according to Alfred's will his one-half of said property was subject to a life estate in Emma during her lifetime; that the division of the properties be made as soon as Emma's debts shall have been determined and paid; that the judgment, if any, in a pending action for services rendered against Emma's estate be treated as Emma's debt and "shall be paid from the properties on hand at the time of her death, prior to the division of the properties as set forth hereinabove"; and that when the debts owed by Emma have been determined and paid, defendant executors file a petition in her estate "requesting an order of the probate court instructing them to make a division of the properties in their possession, as such executors, according to the terms of this Judgment."[9]

Prior to the trial of the instant case, the probate court had determined that the joint and mutual will of September 16, 1949, was Alfred's last will and that the holographic will of January 22, 1954, was Emma's last will. The distribution of the respective estates of the spouses according to said wills was for the probate court and not for the court

[9]The trial court found that at the time of Emma's death certain property consisting of cash, shares of stock, and other personal property aggregating the sum of $10,410.50 in value stood in Emma's name.

below. The payment of the debts of said spouses was also for the probate court. Accordingly, the portions of the judgment ordering such disposition and providing for the payment of debts were erroneous and in excess of the trial court's jurisdiction. ■ The controversy as to the status of the property of the spouses and the question as to whether the joint and mutual will contained an agreement not to revoke the same was, however, properly before the court because the controversy was between respective estates and persons who are strangers to such estates. (See *Central Bank* v. *Superior Court*, 45 Cal.2d 10 [285 P.2d 906].) In the instant declaratory relief action the trial court was therefore called upon to determine whether the spouses had entered into an agreement not to revoke the joint and mutual will. Had the court determined that there was such an agreement it would have been empowered to impress a constructive trust upon the property which Emma had promised to leave to the devisees and legatees in the joint and mutual will. (*Goldstein* v. *Hoffman*, *supra*, 213 Cal.App.2d 803, 812.) It would also have been proper, in such event, for the court to have decreed that the persons holding such property were trustees for said devisees and legatees, and that such property was subject to administration and distribution in Alfred's estate. (*Goldstein* v. *Hoffman*, *supra*, p. 813.) ■ Having determined, however, that the joint and mutual will did not contain a contract not to revoke, the respective wills of the spouses were left where the court below found them, and the court was not required to make any adjudication beyond such finding. The court, however, was called upon to determine whether the joint and mutual will contained an agreement or declaration as to the status of the property of the spouses. Having found that all of the property at Alfred's death was community property there remained nothing more for the court below to do but to make such adjudication and to direct that such community property be delivered to the executors of Alfred's estate for purposes of probate administration. The trial court erred, therefore, in not ordering that all of the community property be first administered in Alfred's estate. Pursuant to Probate Code section 202 the community property passing from the control of the husband by reason of his death is subject to his debts and administration in his estate. Accordingly, it is well settled that upon the death of the husband *all* the community property is subject to administration

in his estate and is chargeable with a proportionate part of the debts and the expenses of administration. (Prob. Code, §§ 202, 300;[10] *Sieroty* v. *Silver*, 58 Cal.2d 799, 803 [26 Cal. Rptr. 635, 376 P.2d 563] ; *Estate of Coffee*, 19 Cal.2d 248, 250, et seq. [120 P.2d 661] ; *Estate of Manley*, 169 Cal.App.2d 641, 644 [337 P.2d 487] ; *Estate of Algee*, 158 Cal.App.2d 691, 696-697 [323 P.2d 221].) ▪ The portion of the community property which belongs to the wife is the one-half which remains after the payment of the husband's debts and the expenses of administration apportioned between the community property and separate property in accordance with the value thereof, and this is true even when the husband's share of the community, together with his separate property, is ample to pay those debts and expenses. (*Sieroty* v. *Silver*, *supra*, pp. 803-804; *Estate of Coffee*, *supra*, pp. 252-253.) ▪ The personal representative of the husband is entitled to the possession of the entire community property and is chargeable with the same upon his accounting. (*Chase* v. *Leiter*, *supra*, p. 457; *Estate of Algee*, *supra*, p. 697.) ▪ Furthermore, as stated in *Sieroty*, "a decree of distribution by the superior court sitting in probate is indispensable as a muniment of a widow's title to property which comes to her as survivor of the community." (P. 804.) Accordingly, the title of a surviving wife to her interest in the community estate rests upon a decree of distribution. (*Sieroty* v. *Silver*, *supra*; *Estate of Nash*, 132 Cal.App.2d 233, 237 [282 P.2d 184] ; *Colden* v. *Costello*, 50 Cal.App.2d 363, 370 [122 P.2d 959].) ▪ Moreover, the apportionment of the wife's share to her is a matter resting exclusively with the probate court. (*Estate of Kurt*, 83 Cal.App.2d 681, 684 [189 P.2d 528] ; *Estate of Phillips*, 123 Cal.App.2d 570, 574 [266 P.2d 954] ; *Estate of Algee*, *supra*, p. 698.) The probate court must determine what part of the community property is needed to pay debts, and what the proper costs and expenses of administration are, before it can be known what "belongs" to the widow. (*Estate of Phillips*, *supra*, p. 574.)

---

[10]Prob. Code, § 300 provides: "When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code."

■ In accordance with the foregoing principles, therefore, the proper probate procedure requires that all of the community property be probated in Alfred's estate. The probate court will thereupon determine the share of such community property to which the estate of each spouse is entitled, and, when the estate is ready for distribution, will order the distribution of Alfred's share of the community property pursuant to his will, and will distribute Emma's share thereof to the representative of her estate. (Prob. Code, § 1023.)

### The Request for Dismissal of Defendants' Appeal

■ Plaintiffs have requested that the appeal of defendants be dismissed upon the ground that said appeal was not perfected. This request was made for the first time in plaintiffs' reply brief and was reiterated at oral argument. No motion or affidavits in support thereof have been filed as required by rule 41 of the California Rules of Court.* The basis of the request is that after the filing of the appeal defendants took no further proceedings therein relative to preparing the clerk's or reporter's transcripts, nor did defendants pay or offer to pay for the ones procured by plaintiffs. Rules 4, 5, 5(c) and 11(a) of the California Rules of Court† providing for the preparation of and payment for transcripts and the sharing of expenses on joint appeals are cited by plaintiffs. Defendants reply that it was agreed between counsel that a single record on appeal should be prepared and that they have been billed and have paid the official court reporter for said transcripts. In view of the failure to file a motion to dismiss as required by the California Rules of Court and in the absence of any record upon which we can consider the merits of the relative contentions of the parties, the request to dismiss is denied. (See *Hooper* v. *Byron Jackson Pumps, Inc.*, 186 Cal.App.2d 651, 652-653 [9 Cal.Rptr. 273].)

■ In summary, we therefore hold as follows:

(1) That as a matter of law the joint and mutual will dated September 16, 1949, was not a contract whereby Alfred and Emma each agreed not to revoke said will. This conclusion has been designated as a finding of fact. In reality it is a conclusion of law and should have been included as such in the conclusions of law. Moreover, this conclusion of law must be incorporated in the judgment as one of the matters adjudicated.

---

*Formerly Rules on Appeal, rule 41.

†Formerly Rules on Appeal, rules 4, 5, 5(c), 11(a).

 (2) That at the time of Alfred's death on August 10, 1953, all property standing solely in Emma's name, or solely in Alfred's name, or in the joint names of Emma and Alfred, as tenants in common or as joint tenants, was the community property of Alfred and Emma. This conclusion is one of law and not a finding of fact. It must be fully included in the conclusions of law and in the judgment. The items constituting such community property and the manner in which the title thereto was held at the time of Alfred's death have been properly set out in the findings of fact and in the judgment.

(3) That the joint and mutual will dated September 16, 1949, was Alfred's last will and testament and was duly admitted as such on April 1, 1960, in Alameda Superior Court proceeding No. 149724. This was a proper finding of fact.

(4) That the holographic will dated January 22, 1954, was Emma's last will and testament and was duly admitted as such on February 26, 1959, in Alameda Superior Court proceeding No. 144106. This was a proper finding of fact.

 (5) The finding of fact as to property standing in Emma's name on her death on July 14, 1958, was not necessary to the adjudication. Any conclusion of law pursuant thereto must be stricken.

(6) That all of the community property of the said spouses at the time of Alfred's death is subject to administration in Alfred's estate. This conclusion of law should be included in the conclusions of law and in the judgment. The portions of the conclusions of law and the judgment providing for the vesting of title to said community property, declaring the ownership of and the rights therein, directing the division of said property, and ordering distribution of the respective shares thereof to the estates of said deceased spouses, subject to the payment of the debts therein designated and as therein provided, being in particular paragraphs 2, 3, 4 and 5 of said conclusions and paragraphs 2, 3, 4, 5 and 6 of the judgment, are in excess of the trial court's jurisdiction and must be stricken from said conclusions of law and the judgment, respectively.

The cause is remanded to the lower court with directions to amend its conclusions of law and enter a modified judgment in accordance with the views herein expressed. As so modified the judgment is affirmed. The purported appeals by the respective parties from the findings of fact and conclusions of law are dismissed. The request by plaintiffs to dis-

miss defendants' appeal is denied. Each of the parties to this appeal shall bear his own costs on appeal.

Bray, P. J., and Sullivan, J., concurred.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied August 14, 1963.