[Civ. No. 34976. First Dist., Div. One. Apr. 10, 1975.]

Estate of MAURICE EMMETT LANE, Deceased.
TED R. LAPPIN, as Executor, etc., et al.,
Petitioners and Appellants, v.
LARRY LANE, Contestant and Respondent.

COUNSEL

Maurice A. Harband for Petitioners and Appellants.

Lawrence J. Perrin and H. Tom Hendren for Contestant and Respondent.

OPINION

ELKINGTON, J.—The issue before us on this appeal concerns the validity of the following written instrument as the last will and testament of Maurice Emmett Lane, deceased:

"Last Will and Testament

"We, Maurice Emmett Lane and Gwendolyn Lane, being of sound and disposing mind and memory and not acting under duress, menace or the influence of any person whatsoever, do hereby make our last will and testament,

"First: We, hereby revoke all other former wills and codicils to wills made by us.

"Second: We, having our wordly [sic] possessions in joint custody, feel that in the event of the decease of both, we wish to have our properties, whether real or personal and wheresoever situated, to be distributed as follows:

"To be divided equally between Nora G. Bassing sister of Maurice E. Lane, and son Larry Lane. Robert Lappin and Ted R. Lappin brothers of Gwendolyn Lane.

"Third: We, hereby nominate and appoint brother Ted R. Lappin to act as executor of this will without bond.

"In witness thereof, we have hereunto set our hand on this 19 day of April 1962.

"[s] Maurice Emmett Lane

"[s] Gwendolyn Lane

"State of California

"County of Santa Clara,

"California

"On April 19, 1962, before me, Helen W. Humphrey, a Notary Public in and for said Santa Clara County, and State, personally appeared, Maurice Emmett Lane and Gwendolyn Lane, his wife, known to me to be the persons whose names are subscribed to the within instrument and have acknowledged that they executed the same.

"[s] Helen W. Humphrey
Notary Public

"My Commission Expires Oct. 15, 1962
Helen W. Humphrey"

We shall hereafter refer to this document as the "will."

Maurice, having survived his wife Gwendolyn, died in November 1971. Offered for probate by the named executor, and admitted by the court as the last will and testament of Maurice, the will was thereafter contested by the latter's son, respondent Larry Lane.

After a trial, which was to the court, the following findings of fact, among others, were made:

"5. On April 19, 1962, Maurice E. Lane and Gwendolyn Lane went to the office of Helen W. Humphrey, a notary public, in Sunnyvale, California; . . .

"7. Maurice E. Lane and Gwendolyn Lane had in their possession a typed written document dated April 19, 1962, entitled "LAST WILL AND TESTAMENT";

"8. Maurice E. Lane declared to the notary public that he and Gwendolyn Lane, his wife, were making their Last Will and Testament;

"9. This declaration was made in the presence of Gwendolyn Lane and Helen W. Humphrey, the notary public, both present at the same time.

"10. Thereupon the instrument was subscribed by Maurice E. Lane personally at the end thereof at the office of the notary public on April 19, 1972, in the presence of Gwendolyn Lane and the notary public, all persons being present at the same time."

The record shows that these findings of fact were supported by substantial evidence. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].) The respondent Larry Lane appears to make no contention to the contrary.

As its sole "conclusion of law" the trial court stated: "The document was not executed in accordance with the California Probate Code and therefore failed as a valid will."

It will be noted that the trial court's express findings of fact establish that the will was subscribed, witnessed and otherwise executed in accordance with section 50 of the Probate Code. ■ The findings' apparent inconsistency with the conclusion of law is resolved by that portion of the trial court's "Memo Decision" stating: "[T]he court determines that there was no provision in the instrument in question which would entitle it to separate probate as the separate will of either Maurice or Gwendolyn. It was not intended to be probated until after the death of both." It thus appears that the trial court's conclusion was that the document "failed as a valid will" because of its form and content, rather than because of the manner of its execution.[1] Such an expression of the court is properly used as an aid in interpreting its findings of fact. (*Distribu-Dor, Inc.* v. *Karadanis,* 11 Cal.App.3d 463, 468 [90 Cal.Rptr. 231].)

■ Our inquiry then is into the question whether the will's form and content rendered it invalid as the last will and testament of Maurice.

---

[1] It is observed that the "Memo Decision" also stated: "The court further concludes that the document was not properly executed in the manner and form required by the law . . . ." But upon objection of the will's proponents the court thereafter adopted their proposed counterfindings, which are set forth above.

Although ordinarily the *construction* of a will plays no part in determining whether it should be admitted to probate (see *Estate of Philippi,* 71 Cal.App.2d 127, 134-135 [161 P.2d 1006]), such a construction here becomes necessary in determining the issue of its validity.

■ No extrinsic evidence was offered in aid of the will's construction at the trial. In such a situation a reviewing court is not bound by the interpretation of a lower court, but will itself interpret the document. (See *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].)

"A joint will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them as their respective wills. It is not necessarily either mutual or reciprocal. . . . A joint and mutual will is one instrument executed jointly by two or more persons, the provisions of which are reciprocal." (Fns. omitted; *Daniels* v. *Bridges,* 123 Cal.App.2d 585, 588-589 [267 P.2d 343].)

■ It will be seen that the will here at issue, containing no reciprocal provisions, was a "joint will." Such a joint will, "executed by both or all of such persons does not affect its validity or effect as the will of any one of them." (*Daniels* v. *Bridges, supra,* 123 Cal.App.2d 585, 588; *Thompson* v. *Boyd,* 217 Cal.App.2d 365, 374 [32 Cal.Rptr. 513]; *Estate of Lee,* 225 Cal.App.2d 578, 580 [37 Cal.Rptr. 572].) " *'It is, in legal effect, the separate will of each of the persons executing it.' "* (*Estate of Lee, supra,* p. 580.)

Considered as the separate will of Maurice, we look at its terms. He recited that all of his property was in "joint custody" with Gwendolyn. (Contestant Larry Lane concedes that this must be interpreted as "joint tenancy.") There was accordingly no reason for Maurice to make testamentary provision for her, and he did not do so. He then made testamentary direction "that in the event of the decease of both [Gwendolyn and himself], we wish to have our properties . . .: To be divided equally" between certain of Gwendolyn's, and certain of his, relatives. In the light of his preceding recital, to the effect that in the event Gwendolyn survived him she would take all of his property as surviving joint tenant, the only reasonable meaning to be given this latter clause is that the will's dispositive provisions would become effective only in the event that he should survive Gwendolyn. So construed, as the "separate will" of Maurice (see *Estate of Lee, supra,* 225 Cal.App.2d 578, 580), no invalidity appears, and it is of no significance that it was "not intended to be probated until after the death of both."

The fact that Gwendolyn, by the same instrument, had in effect made a "separate will," to become operative should she survive Maurice, in no way tended to impugn or invalidate that of Maurice. Nor does any principle of law or public policy known to us call for the invalidation of one or both of the "separate wills" which the parties chose to jointly execute. As we have indicated, the fact that a joint will is executed by two parties "does not affect its validity or effect as the will of [either] of them."

It is of no consequence that in the will Maurice and Gwendolyn used the plural pronouns "we" and "our," in referring to themselves and their property. Such usage "is commonplace and usual language in a joint will, and, in the absence of other circumstances indicating contractual intent, is no more than [a] grammatical expedient by which a single testamentary instrument is used as the will of two or more persons." (*Thompson* v. *Boyd, supra,* 217 Cal.App.2d 365, 380.)

We are aided in our construction of the will by Probate Code sections 101, stating, "A will is to be construed according to the intention of the testator," and 102, declaring that "of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

Consideration has been given the several alternative testamentary interpretations proposed by contestant Larry Lane. None is found reasonable, or in accordance with the obvious intent of Maurice; each would result in total intestacy. Particularly, no intent is seen that the "joint" will was to become effective only in the event of a "common disaster," or that both of the "separate wills" were to become operative upon the death of the survivor, or that the will purported, on the death of the survivor, to dispose of property that was then "jointly held," or that it called for "joint probate" proceedings.

We have also considered the contention that Gwendolyn was not a "competent" witness to Maurice's "separate" will. She was not a beneficiary of Maurice's will; even if she were it would not affect her "competency," it would merely prevent her from taking under his will. (See Prob. Code, § 51; *Estate of Lee, supra,* 225 Cal.App.2d 578, 580.) And we observe neither Probate Code nor other requirement that, as a "matter of law" a testamentary witness shall be one who could be alive when the will is offered for probate; no authority for such a proposition is offered. "The function of an attesting witness to a will is to take note that those things are done which are required by the statute and to subscribe his name to the instrument." (*Estate of LaMont,* 39 Cal.2d 566,

569 [248 P.2d 1].) "If the evidence shows that an instrument purporting to be a will bears the signature of the testator and was declared by him to be his will to two persons who signed at the end of the will as witnesses, in his presence and at his request, the instrument is duly proved as a will." (*Estate of Flentjen,* 80 Cal.App.2d 731, 733-734 [182 P.2d 579].) "What constitutes a sufficient execution of a will is prescribed by the statute; what constitutes sufficient proof of such execution is not so prescribed, and is a different question—a question to be solved by the general principles of evidence." (*Estate of Tyler,* 121 Cal. 405, 409 [53 P. 928].)

The "Judgment After Trial" entered October 31, 1973, is reversed; the superior court will take further proceedings not inconsistent with what we have here said.

Molinari, P. J., and Lazarus, J.,* concurred.

A petition for a rehearing was denied May 9, 1975, and respondent's petition for a hearing by the Supreme Court was denied June 26, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.